UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

NORTHLIGHT EUROPEAN FUNDAMENTAL CREDIT
FUND, HCN LP and BARDIN HILL EVENT-DRIVEN
MASTER FUND LP,

Plaintiffs,

v.

INTRALOT CAPITAL LUXEMBOURG S.A., INTRALOT
S.A., INTRALOT GLOBAL HOLDINGS B.V., INTRALOT,
INC., and INTRALOT US SECURITIES B.V.,

Defendants.

Case No. 1:21-cv-6437

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Northlight European Fundamental Credit Fund ("**Northlight**"), HCN LP and Bardin Hill Event-Driven Master Fund LP ( "**Bardin Hill Event-Driven**" together with HCN LP, "**Bardin Hill**" and together with Northlight, "**Plaintiffs**"), by and through their undersigned attorneys, allege as follows for their Complaint against Intralot Capital Luxembourg S.A. (the "**Issuer**"), Intralot S.A. (the "**Company**"), Intralot Global Holdings B.V. ("**IGH**"), Intralot, Inc. ("**Intralot US**"), and Intralot US Securities B.V. ("**TopCo**") (collectively the "**Intralot Enterprise**" or "**Defendants**"):

### NATURE OF THE ACTION

1.    Plaintiffs are holders of beneficial interests in certain €500,000,000 5.25% Senior Notes due 2024 (the "**2024 Notes**") issued pursuant to an indenture dated September 20, 2017 (the

"**2024 Indenture**").[1]  Through this action, Plaintiffs seek to prevent the consummation of a collusive and coercive transaction engineered by Defendants which, if executed, would impermissibly strip the 2024 Notes of their bargained-for credit protection and transfer that protection to the holders of a separate series of notes issued by the same Issuer and ranking *pari passu* with the 2024 Notes, but set to mature later this year, *i.e.*, —the €250,000,000 6.75% Senior Notes due in September 2021 (the "**2021 Notes**").

2.     The Intralot Enterprise lacks the means to pay the 2021 Notes upon their impending maturity.  Typically, a debtor facing such a prospect would either renegotiate its debt in a manner that grants comparable treatment to similarly-situated creditors, or file for court-supervised reorganization.  Defendants apparently view the first of these options as too expensive, and are unwilling to accept the loss of current ownership's control over the enterprise that would result from a reorganization.  So, in collusion with certain holders of the 2021 Notes, Defendants have devised a third option:  induce holders of the 2021 Notes (the "**2021 Noteholders**") to refinance that debt by offering them a sweetheart deal at the expense of the holders of the 2024 Notes (the "**2024 Noteholders**").

3.     The terms of the collusive bargain—which were determined after Defendants negotiated exclusively with a group of 2021 Noteholders (despite multiple attempts by Plaintiffs and certain other 2024 Noteholders to engage in negotiations)—are set forth in the Exchange Offer and Consent Solicitation Memorandum and the Information Memorandum with respect to the 2021 Notes (the "**2021 Exchange Offer**"), and in the Exchange Offer Memorandum and Information Memorandum with respect to the 2024 Notes (the "**2024 Exchange Offer**" and together with the

---

[1]  A true and correct copy of the 2024 Indenture is attached hereto as Exhibit A.

2021 Exchange Offer, the "**Exchange Offers**").  These documents constitute one integrated transaction, with both Exchange Offers contingent on each other.

4.     In exchange for surrendering their 2021 Notes, and thus allowing the Issuer to avoid the looming default and reorganization which would inevitably result, holders of the 2021 Notes will receive Senior Secured PIK Toggle Notes (the "**New Preferential Secured Notes**") to be newly issued by Intralot US.  In contrast with the 2021 Notes, which are unsecured and rank equally with all other unsecured debt (such as the 2024 Notes), the New Preferential Secured Notes will be secured by the assets and equity of Intralot US, which is the crown jewel of the Intralot Enterprise and generates over 70% of Intralot Enterprise's EBITDA and earnings.

5.     The 2024 Noteholders, for their part, have been saddled with the Hobson's choice represented by the 2024 Exchange Offer of either: (a) exchanging some undetermined portion of their 2024 Notes for a minority equity interest in an indirect parent company of Intralot US, and thereby accepting a structurally subordinated position relative to the 2021 Notes (and additionally, equity always ranks behind debt), or (b) keeping their 2024 Notes, only now without recourse to Intralot US, as pursuant to the 2021 Exchange Offer, that crown jewel entity will have been released as a guarantor of the 2024 Notes and its assets will have been pledged to secure the New Preferential Secured Notes.  In other words, if this scheme is consummated, the entirety of the half a billion euros owed to the 2024 Noteholders will be effectively uncollectable.  Plaintiffs and the other 2024 Noteholders will no longer rank equally with the 2021 Noteholders but will be stripped of the most valuable aspects of the credit protections they currently enjoy and be left with effectively uncollectable claims subordinated to the New Preferential Secured Notes.

6.      There is one small subset of 2024 Noteholders who will be spared the devastating effects of this illicit transaction if it is allowed to come to fruition.  A group of entities that directly or through affiliates hold substantial positions in the 2021 Notes in addition to their 2024 Notes —BP Holdings K. LP, Centre Street Investment S.A.R.L, the Indiana Public Retirement System and SCF Investment II S.A.R.L. (collectively, the "**Cross Holders**") — used the leverage afforded to them by their substantial holdings in the 2021 Notes to negotiate for themselves a "backstop" arrangement.   Under this sweetheart deal, in exchange for committing to vote their 2024 Notes in favor of the proposed transaction, they will receive special rights to appoint directors of Intralot US and, on information and belief, monetary consideration.  These preferential terms were not offered to Plaintiffs or to the overwhelming majority of 2024 Noteholders.

7.      Not surprisingly, this scheme, if effectuated, would violate a number of the covenants in the 2024 Indenture, which governs the 2024 Notes held by Plaintiffs.

*      It would violate Section 4.10, the indenture covenant that prohibits the obligors of the 2024 Notes from creating a security interest (*i.e.*, in the assets and equity of Intralot US) for the benefit of the 2021 Noteholders (and other similarly-situated creditors) without creating an equal and ratable security interest for the benefit of the 2024 Noteholders.

*      It would violate Section 4.17 of the 2024 Indenture, which prohibits the Issuer from designating its key revenue-generating affiliate, Intralot US, as an "Unrestricted Subsidiary"—and therefore no longer a guarantor of the 2024 Notes.

*      It would violate provisions in the 2024 Indenture that require the Issuer to redeem the 2024 Notes in the event of the change of control of Intralot US, which will result

when control of that entity is handed over to the former 2021 Noteholders, including as a result of Intralot US and its subsidiaries being severed from the companies providing credit support to the 2024 Notes and granting security interest for the benefit of former 2021 Noteholders.  Importantly, if the Company does not honor its redemption obligations to the 2024 Noteholders, the former 2021 Noteholders (including the Cross Holders) as transferees of control over Intralot US, will become successors to the Company's redemption obligations pursuant to Section 5.01 of the 2024 Indenture.

8.     The Exchange Offers and resulting transfer of Intralot US to the 2021 Noteholders would also constitute an impermissible insider preference and fraudulent transfer in violation of Uniform Voidable Transactions Act § 273(a) and 274(b), N.Y. Debt. & Cred. Law §§ 270-281 ("**NYUVTA**").

9.     The Intralot Enterprise's collusive scheme is to be perpetrated with the direct involvement of The Law Debenture Trust p.l.c. (the "**Trustee**"), which serves as trustee for both the 2021 Notes and the 2024 Notes, and will also be the trustee of the New Preferential Secured Notes to be issued in violation of the 2024 Indenture.  Because the interests of the 2021 Notes and the 2024 Notes are adverse insofar as the Exchange Offers are concerned, the Trustee has an irreconcilable conflict of interest.  The Trustee is further conflicted inasmuch as it stands to receive additional remuneration as Trustee of the New Preferential Secured Notes if the 2021 Exchange Offer is allowed to proceed.

10.     For their relief, Plaintiffs seek the entry of a declaration that the Exchange Offers violate the 2024 Indenture and would effectuate a transaction that is voidable under NYUVTA, and for injunctive and other relief.

## THE PARTIES

11.     Plaintiff Northlight is incorporated in the Cayman Islands and has its principal place of business at Ugland House, P.O. Box 309, Georgetown, Grand Cayman, Cayman Islands KY1-1104. Northlight is a holder of beneficial interests in the 2024 Notes.

12.     Plaintiff HCN LP is a limited partnership organized under the law of the Cayman Islands and based on the citizenship of its partners, upon information and belief, is a citizen of the Cayman Islands, the United Kingdom and the State of Delaware and is not a citizen of the State of Georgia.  HCN LP is a holder of beneficial interests in the 2024 Notes.

13.     Plaintiff Bardin Hill Event-Driven is a limited partnership organized under the laws of the Cayman Islands and based on the citizenship of its partners, upon information and belief, is a citizen of the Cayman Islands, and the States of Delaware, Florida, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, New Hampshire, Ohio, Puerto Rico, Rhode Island, Washington D.C., and Wisconsin, and is not a citizen of the State of Georgia.  Bardin Hill Event-Driven is a holder of beneficial interests in the 2024 Notes.

14.     The Issuer, Intralot Capital Luxembourg S.A., is a public limited liability company incorporated under the law of the Grand Duchy of Luxembourg with its registered office at 46A, avenue J.F. Kennedy, L-1855 Luxembourg, and registered with the Luxembourg Register of Commerce and Companies under number B186753.  Intralot Capital Luxembourg S.A. is the

Issuer of the 2024 Notes and the 2021 Notes.  Intralot Capital Luxembourg S.A. is a wholly-owned subsidiary of Intralot Global Securities B.V. ("**IGS**").

15.     Intralot S.A. (the Company) is a public limited liability company (*société anonyme*) incorporated under the laws of the Hellenic Republic with a principal place of business at 64, Kifissias Ave. & 3, Premetis Str., 112 57 Athens, Greece.  The Company is the parent company of the Issuer and a guarantor of the 2024 Notes.

16.     IGH (or Intralot Global Holdings B.V.) is a private limited company (*besloten vennootschap met beperkte aansprakelijkheid*) incorporated under the law of the Netherlands with a principal place of business at Delfandlaand 1, 1062 EA, Amsterdam, Netherlands.  IGH is a wholly-owned subsidiary of Intralot Global Securities B.V.  IGH is a Subsidiary Guarantor under the 2024 Notes, as that term is defined below.  IGH is an indirect parent company of Intralot US and will cause a lien on 100% of the stock in Intralot US to be granted under the New 2021 Preferential Indenture, as that term is defined below, which will benefit the members of the 2021 Noteholder Group.

17.     Intralot US (or Intralot, Inc.) is a corporation organized and existing under the laws of the State of Georgia in the United States of America with a principal place of business at 11360 Technology Cir, Duluth, GA 30097.  Intralot US is a Subsidiary Guarantor under the 2024 Notes, as that term is defined below.  Intralot US is also the proposed issuer under the indenture for the New Preferential Secured Notes if the 2021 Exchange Offer is completed (the "**New 2021 Preferential Indenture**") and will secure the New Preferential Secured Notes with substantially all of its assets.  Intralot US represents more than 70% of both the EBITDA and earnings of the

group of entities supporting the 2024 Notes and is thus the economic engine and the crown jewel of the Intralot Enterprise.

18.     TopCo (or Intralot US Securities B.V.), is a private limited company incorporated under the law of the Netherlands with a principal place of business at Delfandlaand 1, 1062 EA, Amsterdam, Netherlands.   TopCo will become a guarantor under the New 2021 Preferential Indenture and will contribute collateral preferentially for the benefit of the New Preferential Secured Notes.

## STANDING

19.     Plaintiffs are entitled to bring this action directly because the Trustee is incurably conflicted.  The Trustee acts as trustee for both the 2024 Notes and the 2021 Notes, and is further conflicted insofar as it has been named as trustee for the proposed New Preferential Secured Notes and therefore has a financial interest in completing the Exchange Offers.  Plaintiffs have raised their concerns about these conflicts directly with the Trustee, which has refused to engage on the point or otherwise act to protect the interests of the 2024 Noteholders.

20.     Plaintiffs are also entitled to bring statutory claims relating to the 2024 Notes directly, irrespective of any conflict on the part of the Trustee.

21.     Defendants, finally, have taken the position that the Trustee has no power to pursue remedies under the 2024 Indenture prior to the occurrence of an Event of Default under the 2024

Indenture (as defined therein), leaving Plaintiffs no other avenue to pursue their claims than to act directly.[2]

22.     Section 2.01 of the 2024 Indenture provides that "The registered Holder of a Global Note may grant proxies and otherwise authorize any Person, including Participants and Persons that may hold interests through Participants, to take any action that a Holder is entitled to take under this Indenture or the Notes."  Such authorization may be obtained by Plaintiffs at any time, including retroactively.  Plaintiffs are in the process of obtaining proxies from the registered Holder of the 2024 Notes.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.   Specifically, all but one of the Defendants is a foreign entity. Defendant Intralot US is incorporated and domiciled in the State of Georgia in the United States. Plaintiff Northlight is incorporated in the Cayman Islands and has its principal place of business in the Cayman Islands. On information and belief, Plaintiff Bardin Hill is citizen of the Cayman Islands, United Kingdom and the States of Delaware, Florida, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, New Hampshire, Ohio, Puerto Rico, Rhode Island, Washington D.C., and Wisconsin.   On information and belief, none of the Plaintiffs are citizens of the State of Georgia.

---

[2]   Defendants' position on this point is incorrect as a matter of law and, even were it otherwise, the Issuer's involvement in the Exchange Offers, which contemplate transactions in breach of the 2024 Indenture, is not an activity permitted under Section 4.29 of the 2024 Indenture and therefore constitutes a breach thereof and an Event of Default (as defined therein).

24.     This Court has personal jurisdiction over the Issuer, the Company, IGH and Intralot US because each of those Defendants agreed in Section 14.09 of the 2024 Indenture that "any suit, action or proceeding arising out of or based upon this indenture, any Guarantee or the notes may be instituted in any state or federal court in the Borough of Manhattan, New York, New York . . . and each of them irrevocably submits to the non-exclusive jurisdiction of such courts in any suit, action or proceeding."

25.     This Court has personal jurisdiction over TopCo because TopCo is availing itself of the United States markets by offering its stock in the 2024 Exchange Offer under the private placement exemption and targeting, on information and belief, eligible holders within the United States.

26.     Venue is proper in the district based on Section 14.09 of the 2024 Indenture which provides that "The Issuer and each Guarantor irrevocably waive, to the fullest extent permitted by law, any objection to any suit, action, or proceeding that may be brought in connection with this Indenture, ... in [this Court] whether on the grounds of venue, residence or domicile or on the ground that any such suit action or proceeding has may be brought in an inconvenient forum."

## FACTS AND GENERAL ALLEGATIONS

### A.     The Company and the Notes

27.     The Intralot Enterprise is an international gaming enterprise in the business of providing integrated gaming systems and services in a number of countries around the world.  The Intralot Enterprise designs, develops, operates and supports customized software and hardware for the gaming industry, providing technology and management services to state and state-licensed lottery and gaming organizations worldwide.

28.     The Issuer is a special purpose finance vehicle and issued the 2024 Notes in 2017. The 2024 Notes have an outstanding amount of €500,000,000, pay interest at a rate of 5.250% per annum, payable semi-annually on March 15 and September 15 of each year, and mature in September 15, 2024.

29.     The 2024 Notes are general obligations of the Issuer and guaranteed by the Company and certain "Subsidiary Guarantors," among them Defendants Intralot US and Intralot Global Holdings B.V.

30.     The 2021 Notes were also issued by the Issuer.  The 2021 Notes have an outstanding amount of €250,000,000 and pay interest at a rate of 6.750% per annum, payable semi-annually on March 15 and September 15 of each year, and mature on September 15, 2021.

31.     The 2021 Notes and 2024 Notes are essentially identical in material terms, except for their maturity date and interest rate, and they rank *pari passu* in right of payment with each other and all existing and future debt of the Issuer that is not subordinated in right of payment to the 2024 Notes.  The primary difference between these Notes is that the 2021 Notes will mature imminently.  If the Issuer is unable to pay the 2021 Notes in full upon maturity this September, there will be an Event of Default on the 2021 Notes (as defined therein), and therefore a cross-default under the 2024 Notes.  As a consequence of such default, the 2021 Noteholders and the 2024 Noteholders would each be entitled to receive *pro rata* distributions from the same source of available assets, with the 2024 Noteholders receiving two-thirds of the distribution and the 2021 Noteholders receiving one-third.  This is so because there are €500,000,000 of the 2024 Notes outstanding and €250,000,000 of the 2021 Notes outstanding.

**B.**      **The Company and the 2021 Noteholders Enter Into a Lock-Up Agreement and Engage in Coercive and Exclusionary Discussions**

32.      During the course of 2020, facing both insolvency and a looming (September 2021) maturity date for the 2021 Notes that it could not meet, the Company began discussions with the members of an ad hoc group of 2021 Noteholders (the "**2021 Noteholder Group**") regarding the restructuring of the 2021 Notes and 2024 Notes.   The Company has engaged in discussions exclusively with the 2021 Noteholder Group and has excluded Plaintiffs and all other 2024 Noteholders that are not also holders of 2021 Notes from such discussions.

33.      In January 2021, the Company entered into a binding agreement with members of the 2021 Noteholder Group (the "**Lock-Up Agreement**"),[3] which was later extended and updated as discussions continued. This Lock-Up Agreement, which has grown to include holders of 90% of the 2021 Notes[4], all but ensures that any transaction with the Company would provide for preferential treatment of the 2021 Notes over the 2024 Notes, even though there are twice as many 2024 Notes outstanding.

34.      Under the Lock-Up Agreement, the Company set out the terms of a series of transactions to exchange the 2021 Notes for the New Preferential Secured Notes.  The Lock-Up Agreement also contemplates that the Company will offer the 2024 Noteholders the opportunity

---

[3]   *See* Press Release *Intralot enters into a binding lock-up agreement with key noteholders in support of the proposed capital structure optimisation transactions that will address its upcoming maturities and materially deleverage its balance sheet* available at
https://www.intralot.com/files/INTRALOT_Announcement_Jan__14_2021_EN.pdf
[4]   *See* July 1, 2021 Press Release *INTRALOT provides an update on the Lock-up agreement and exchange offer process*  ("holders of more than 90% of the 2021 SUNs outstanding as of the date of this press release have agreed to tender their 2021 Notes pursuant to the Lock-up Agreement.") available at
https://www.intralot.com/files/PR_INTRALOT_Exchange_Offers_EN_01_07_2021.pdf

to exchange their 2024 Notes for dramatically less valuable consideration—specifically, a minority share of the capital of a new entity that is an indirect parent of Intralot US—in violation of the 2024 Indenture.  However, as detailed below, to facilitate the success of the 2021 Exchange Offer, Defendants promised the Cross Holders (who hold both series of the 2021 Notes and the 2024 Notes) preferential treatment with respect to their 2024 Notes to ensure that they would vote their 2021 Notes in favor of the 2021 Exchange Offer.

35.     The binding Lock-Up Agreement requires holders of more than 90% of the 2021 Notes to tender their 2021 Notes pursuant to the 2021 Exchange Offer.  Accordingly, absent this proceeding, the 2021 Exchange Offer is expected to have sufficient support to be consummated.

**C.     The Collusive and Coercive Exchange Offers**

36.     Following months of discussion with the 2021 Noteholder Group, on July 1, 2021, the Issuer announced collusive and preferential concurrent Exchange Offers.[5]  As explained below, the Exchange Offers improperly divert valuable assets to the 2021 Noteholders at the expense of the Company and its creditors as a whole, to the detriment of the 2024 Noteholders.

37.     Most fundamentally, the Exchange Offers improperly and illegally divert recovery to the 2021 Noteholders by flipping on its head the *pro rata* distribution that would otherwise follow an event of a default and result in the 2024 Noteholders receiving two-thirds of the distribution and the 2021 Noteholders receiving one-third.

---

[5]  *See* Press Releases summarizing the terms of the Exchange Offers available at https://www.intralot.com/files/Intralot_-_Press_Release__2021_Exchange_Offer_.pdf and https://www.intralot.com/files/Intralot-_Press_Release__2024_Exchange_Offer_.pdf.

38.     The Exchange Offers contemplate that after their consummation, the crown jewel of the enterprise, Intralot US, which represents more than 70% of the enterprise's EBITDA and earnings, will be released from the group of entities guaranteeing the 2024 Notes and will thereafter be for the exclusive benefit of the 2021 Noteholders.  The 2021 Noteholders will receive the New Preferential Secured Notes, for which Intralot US will be the issuer and its subsidiaries will be the guarantors.

39.     Additionally, the New Preferential Secured Notes that the 2021 Noteholders will be given are to be secured by liens on the assets and stock of Intralot US and its subsidiaries, including liens on intercompany indebtedness and bank accounts.

40.     The 2021 Exchange Offer also provides that all intercompany debt owed to the Company by TopCo, or any of its subsidiaries, including Intralot US, will be subordinated to the New Preferential Secured Notes.  *See* 2021 Exchange Offer Memorandum at 128-129.  Thus, the Exchange Offers will result in members of the 2021 Noteholder Group receiving: (i) liens on the assets of the most valuable subsidiary (Intralot US); (ii) liens on the intermediate parent's shares in the immediate parent of Intralot US; (iii) nearly complete control over Intralot US and Intralot Tech Single Member S.A. ("**Intralot Tech**") through the Joint Venture mechanism (detailed below); and (iv) intercompany debt owed to the Company by TopCo and its subsidiaries being subordinated to the New Preferential Secured Notes, all to the detriment of the 2024 Noteholders.

41.     While the 2021 Noteholders receive the strength of the secured credit support of Intralot US, the 2024 Noteholders are to be stripped of all such value under the Exchange Offers. Intralot US's guarantee of the 2024 Notes will be released, in violation of the 2024 Indenture, and this robust entity will cease to have any obligation to the 2024 Noteholders or be governed by any

of the requirements or restrictive covenants contained in the 2024 Indenture.  In other words, following the consummation of the Exchange Offers, if there is an event of default, rather than the 2021 and 2024 Noteholders sharing *pro rata* in distributions from Intralot US, with the 2024 Noteholders distribution being two-thirds based on the relative amounts outstanding, the 2021 Notes will receive all of the value of the crown jewel and its subsidiaries, leaving the 2024 Noteholders with nothing.

42.     The only alternative the 2024 Noteholders are being offered is the 2024 Exchange Offer, pursuant to which they have the dubious "opportunity" to exchange some as yet undetermined portion of their 2024 Notes for a share of a minority (at most 49%) equity interest in TopCo, an indirect parent of Intralot US.  The majority equity interest will be owned by IGH, which is indirectly owned by the current shareholders of the enterprise through their ownership of the Company (Intralot S.A.).

43.     As equity holders in TopCo, the 2024 Noteholders who accept the 2024 Exchange Offer will (like those who do not) receive no value from Intralot US if there is an event of default under the New Preferential Secured Notes.

44.     Set forth below is a simplified and summarized corporate and financing structure chart indicating the structure after giving effect to the transactions contemplated under the Exchange Offers.



See 2024 Exchange Offer Memorandum at 30; 2024 Exchange Information Memorandum at 29.

45.    A key aspect of the transactions contemplated by the Exchange Offer is that the current ownership of the Intralot Enterprise retains control, though they have ceded certain governance rights to the Cross Holders in order to purchase their cooperation.

46.    On or around the closing date, IGH, TopCo, and each Participating 2024 Noteholder, including the Cross Holders, will enter into the Joint Venture Agreement with respect to TopCo and its subsidiaries, including Intralot US.  See 2024 Exchange Offer Memorandum at 28, 102; Exchange Information Memorandum at 31, 108.  Pursuant to the Joint Venture Agreement, TopCo and its subsidiaries (the "**Group**") are to be owned, controlled, managed and financed as a joint venture on the terms set out in the Joint Venture Agreement.

47.     Among other things, the Joint Venture Agreement will govern the composition of the board of directors of TopCo.  For so long as IGH holds more than 30% of the shares in TopCo, it will be entitled under the terms of the Joint Venture Agreement to exercise control by nominating six directors to the board of TopCo (each, a "**TopCo Director**"), and such greater number as is required for IGH to nominate the majority of the TopCo Directors and facilitate certain requirements as to the location of the management and control of TopCo, to be appointed by the general meeting to the board of TopCo (the "**TopCo Board**").  For so long as the Cross Holders (who are serving as "Backstop Commitment Parties"[6]) collectively hold 10% or more of the shares in TopCo, they will each be entitled under the terms of the Joint Venture Agreement to nominate one TopCo Director, to be appointed by the general meeting to the TopCo Board.  For so long as any other shareholder in TopCo holds 10% or more of the shares in TopCo, it will be entitled under the terms of the Joint Venture Agreement to nominate two TopCo Directors, to be appointed by the general meeting to the TopCo Board.  The board of directors of HoldCo is to be identical to the TopCo Board from time to time.  The board of Intralot US will be constituted using the same procedure as set out above for TopCo.  *See* 2024 Exchange Offer Memorandum at 102; 2024 Exchange Information Memorandum at 108.  The board's authority will necessarily include the ability set the strategic direction of Intralot US including further restructuring and encumbering of Intralot US.

48.     The Joint Venture Agreement provides that certain matters of the Group require the prior written approval of each shareholder of TopCo holding 10% or more of the Shares and,

---

[6]  The exchange offers defines "Backstop Commitment Parties" as "Certain holders of that 2024 Notes that have backstopped the 2024 Notes Exchange Offer by committing that they will tender an aggregate principal amount of €68,176,000 in 2024 Notes in the 2024 Notes Exchange Offer."

provided they collectively hold 10% or more of the Shares, the Cross Holders (acting jointly).  The Joint Venture Agreement provides that, subject to certain thresholds, certain Group matters require the prior written approval of applicable shareholders holding a sufficient proportion of the issued and outstanding share capital of TopCo.  Such matters include, indicatively, certain corporate actions (such as fundamental business changes), certain changes to Group's share capital structure, material mergers & acquisitions transactions, and certain related party transactions.  However, and subject to the matters explicitly requiring approval of applicable shareholders, the Participating 2024 Noteholders will have no right to manage the affairs of the Group, with TopCo's Board having responsibility for the overall strategic guidance of the Group and for overseeing the Group's internal controls.  *See* 2024 Exchange Offer Memorandum at 102; 2024 Exchange Information Memorandum at 108.

**D.**     **The Exchange Offers and Issuers' Conduct Violate the 2024 Indenture**

49.     The 2021 Exchange Offer contemplates transactions in breach of the 2024 Indenture, including depriving the 2024 Noteholders of the value of significant guarantees, granting impermissible liens to the New Preferential Secured Notes, improperly attempting to designate certain guarantors under the 2024 Indenture as Unrestricted Subsidiaries, and further depriving the 2024 Noteholders of value by causing guarantors of the 2024 Notes to enter into a subordination agreement.

**1.**     **Designation of Intralot US and Its Subsidiaries as Unrestricted Subsidiaries is Impermissible**

50.     A key aspect of the 2021 Exchange Offer involves changing the status of Intralot US and other subsidiaries under the 2024 Indenture from "Restricted" to "Unrestricted," in order to avoid various restrictions under the covenants contained in the 2024 Indenture and allow

Defendants to saddle those entities with liens and release them from their obligations to the 2024 Noteholders.

51.     Section 4.17 of the 2024 Indenture entitled "Designation of Restricted and Unrestricted Subsidiary" permits the Company (Intralot S.A.) to designate a Restricted Subsidiary as an Unrestricted Subsidiary only if certain qualifications are met.

52.     Specifically, Section 4.17 of the Indenture provides:

> The Board of Directors of the Company may designate any Restricted Subsidiary (other than the Issuer) to be an Unrestricted Subsidiary (a "Designation") if that Designation would not cause a Default.  If a Restricted Subsidiary is designated as an Unrestricted Subsidiary, the Fair Market Value of the Company's interest in the Subsidiary so designated shall be deemed to be an Investment made as of the time of the Designation and shall reduce **either** (i) the amount available for Restricted Payments under Section 4.07 of this Indenture **or** (ii) the amount available for Permitted Investments, as determined by the Company.  That Designation shall only be permitted if the Investment would be permitted at that time and if the Restricted Subsidiary otherwise meets the definition of an Unrestricted Subsidiary.

(emphasis added.)

53.     Based on the implied equity value of the Exchange Offers, the value of Intralot US is €345,000,000, which, on information and belief, will result in a transfer that will far exceed not only the availability under either the Restricted Payments basket or the Permitted Investments basket, but also the combined Restricted Payments and Permitted Investments basket, if such a combination were permissible under the 2024 Indenture, which it is not.

54.     Moreover, additional value will be transferred away from 2024 Noteholders as a result of Intralot US, TopCo, and its other restricted subsidiaries being required to enter into a subordination agreement, which will cause intercompany payables owed by any of these companies to the Issuer, Intralot S.A., TopCo, HoldCo, Intralot Tech, or IGH to be subordinated

to the New Preferential Secured Notes.  *See* 2021 Exchange Offer Information Memorandum at 128-129.

55.    Intralot US and the other specified entities do not meet the qualifications set forth in the 2024 Indenture to be designated Unrestricted Subsidiaries.

### 2.    No Lien Can Be Granted Without Granting an Equal and Ratable Lien to 2024 Notes

56.    Section 4.10 of the 2024 Indenture governs "Limitation on Liens" and prohibits the Company and any "Restricted Subsidiary" from incurring liens, except for Permitted Liens, unless the 2024 Notes are granted an equal and ratable lien.  Entities that qualify as Unrestricted Subsidiaries are not barred from incurring liens.

57.    The definition of Permitted Liens in the 2024 Indenture[7] includes, among other things:

> (j) Liens securing Permitted Refinancing Debt of secured Debt incurred by the Company or a Restricted Subsidiary, provided that any such Lien is limited to all or part of the same property or asset (plus improvements, accessions, proceeds of dividends or distributions in respect thereof) that secured the Debt being refinanced;
>
> (r) Liens (including put and call arrangements) on Capital Stock, warrants or other securities of any Unrestricted Subsidiary that secure Debt of such Unrestricted Subsidiary;
>
> (ee) Liens created on any asset of the Company or any Restricted Subsidiary to secure (a) Debt of the Company or any Restricted Subsidiary incurred pursuant to Section 4.06(a) of this Indenture, (b) Debt of the Company or any Restricted Subsidiary incurred pursuant to Section 4.06(b)(i) or Section 4.06(b)(xvi) of this Indenture or (c) any Permitted Refinancing Debt in respect of Debt incurred pursuant to the foregoing clause (a) or this clause (c), provided that such Debt incurred pursuant to the foregoing clauses (a) through (c) do not exceed in the aggregate a principal amount (or accreted value, as applicable) equal to the greater of €100.0 million and 10.0% of Total Assets less the aggregate principal amount (or accreted value, as applicable) of Non-Guarantor Debt at any time outstanding

---

[7]  *See* 2024 Indenture (Exhibit A hereto).  The definition of "Permitted Liens" begins on page 19.

(except, for the avoidance of doubt and to avoid duplication, to the extent such Non-Guarantor Debt is secured by a Lien incurred pursuant to this clause (ee));

(hh) any extension, renewal, refinancing or replacement, in whole or in part, of any Lien described in the foregoing clauses (a) through (gg); provided that any such Lien is limited to all or part of the same property or assets (plus improvements, accessions, proceeds or dividends or distributions in respect thereof) that secured (or, under the written arrangements under which the original Lien arose, could secure) the Debt being refinanced.

58.     The definition in paragraph (ee) of Permitted Liens permits liens securing debt that "do[es] not exceed in the aggregate a principal amount (or accreted value, as applicable) equal to the greater of €100.0 million and 10.0% of Total Assets."  Thus, any lien incurred must fall within this threshold.

59.     According to the Company's most recent balance sheet, its Total Assets are €612 million.  Thus, the proposed secured debt of €205 million to be issued to holders of 2021 Notes pursuant to the 2021 Exchange Offer far exceeds the permissible 10% threshold under this section. Nor does the 2021 Exchange Offer fall within any of the other paragraphs defining Permitted Liens.

**3.     Change of Control**

60.     The term "Change of Control" is defined in the 2024 Indenture to mean "the direct or indirect sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one or a series of related transactions, of all or substantially all of the properties or assets of the Company and its Subsidiaries taken as a whole to any Person. . . ." (emphasis added).  Thus, a disposition of "all or substantially all" of the assets of the Company, including the granting of liens on the assets and stock of Intralot US, which represents more than 70% of the Company's EBITDA and 70% of its earnings, constitutes a "Change of Control."  In addition, Intralot US and its subsidiaries will be further severed from the Issuer and the Company as a result

of the contemplated release of their guarantees of the 2024 Notes and the subordination of their intercompany indebtedness owed to the Issuer and the Company to the New Preferential Secured Notes.

61.     Section 4.15(a) provides: "If a Change of Control occurs, each Holder of Notes shall have the right to require the Issuer (or the Company, if the Company makes the purchase offer referred to below) to repurchase all or any part (equal to €100,000 or any integral multiple of €1,000 in excess thereof) of that Holder's Notes pursuant to an offer (a 'Change of Control Offer') on the terms set forth in this Indenture."

62.     In addition, Section 5.01 of the 2024 Indenture governs "Merger, Consolidation or Sale of Assets."  This section provides that the Company may not directly or indirectly "sell, assign, transfer, convey or otherwise dispose of all or substantially all of the properties or assets of the Company and its Restricted Subsidiaries . . . . in one or more related transactions" unless the acquiring entity "assumes all the obligations of the Company under the Company Guarantee and this Indenture pursuant to agreements reasonably satisfactory to the Trustee."

63.     Thus, under Section 5.01 of the 2024 Indenture, transferees (including participants in the 2021 Exchange Offer) are required to assume all of the Company's obligations under the 2024 Indenture, but no provision has been made for them to do so.

## CONTRACTUAL CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
(For Declaratory Relief Related to Section 4.17 of the Indenture)

64.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 herein.

65.     Section 4.17 of the 2024 Indenture permits the designation of Intralot US as an "Unrestricted Subsidiary" only if there is sufficient availability under the "Restricted Payments" or the "Permitted Investments" categories to accommodate the "Fair Market Value" of Intralot S.A.'s interest in Intralot US, which would be deemed an "Investment."

66.     Intralot US cannot be designated as an Unrestricted Subsidiary because the value of Intralot US exceeds the availability of each basket in clauses (i) and (ii) of Section 4.17, nor is it permissible to utilize a combination of both baskets, which, in any event, do not collectively have sufficient availability.

67.     The 2021 Exchange Offer, if consummated, would thus violate Section 4.17 of the 2024 Indenture.

## SECOND CLAIM FOR RELIEF
(For Declaratory Relief Related to Section 4.10 of the Indenture)

68.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 herein.

69.     Section 4.10 of the 2024 Indenture prohibits the Company and any Restricted Subsidiary from incurring liens, except for Permitted Liens, unless the 2024 Notes are granted an equal and ratable Lien.

70.     The 2021 Exchange Offer would create a lien that is not a Permitted Lien and does not grant and equal and ratable lien to the 2024 Noteholders.

71.     The lien to be created by the 2021 Exchange Offer does not fit within paragraph (ee) of the Permitted Liens definition (or any other paragraph of the definition of Permitted Liens) in

the 2024 Indenture because the lien to be created exceeds the applicable cap of the greater of €100 million and 10.0% of Total Assets of the Company.

72.     The 2021 Exchange Offer, if consummated, would thus violate Section 4.10 of the 2024 Indenture.

### THIRD CLAIM FOR RELIEF
(For Declaratory Relief Related to Change in Control Provisions of the Indenture)

73.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 herein.

74.     The 2021 Exchange Offer contemplates a disposition of "all or substantially all" of the assets of the Company, including granting liens on the assets and stock of Intralot US and severing Intralot US and its subsidiaries and their assets from the Issuer and the Company.

75.     The 2021 Exchange Offer would thus constitute a Change of Control as that term is defined in the Indenture.

76.     Upon the occurrence of a Change of Control, the Issuer is required to give holders the opportunity to put the notes to the Issuer at 101% of par plus accrued interest.

77.     The 2021 Exchange Offer does not contemplate the payment to the 2024 Noteholders of 101% of par value plus accrued interest.

78.     Section 5.01 of the Indenture requires that transferees (such as participants in the 2021 Exchange Offer) must assume all of the obligations under the applicable guarantee and the 2024 Indenture pursuant to terms reasonably satisfactory to the Trustee.

79.    The 2021 Exchange Offer does not contemplate the assumption of the obligations under the 2024 Indenture and guarantees.

80.    The 2021 Exchange Offer thus violates the Change of Control provision of the 2024 Indenture.

## STATUTORY CAUSES OF ACTION

81.    For purposes of the Fourth and Fifth claims for relief, Plaintiffs allege as follows:

(a)    The Exchange Offers are not made in good faith. The Company is insolvent or will be rendered insolvent by the Exchange Offers as demonstrated, in part, by:

(i) Negative shareholder equity of ($223.52) million at year end 2020; and

(ii) Negative free cash flow of ($38.60) million at year end 2020;

(b)    The Exchange Offers will result in the 2021 Noteholder Group and the 2021 Noteholders receiving both the current and prospective value of Intralot US, without transferring to the Company reasonably equivalent value in exchange for the transfer or obligation;

(c)    The Company has engaged or is about to engage in a business or transaction for which its remaining property was an unreasonably small capital and each of the Exchange Offers would be voidable as fraudulent as to the Debtors' creditors;

(d)    Each of the Exchange Offers, if consummated, would be voidable by the 2024 Noteholders under New York's Uniform Voidable Transactions Act, N.Y. Debt. & Cred. Law §§ 270-281 ("**NYUVTA**").

## FOURTH CLAIM FOR RELIEF
(For Declaratory Relief—Insider Preference under NYUVTA)

82.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 81 herein.

83.     The Exchange Offers represent a non-arms'-length transaction that diverts valuable assets to the 2021 Noteholder Group and the 2021 Noteholders at the expense of the Company and its creditors as a whole.

84.     The 2021 Noteholder Group and the 2021 Noteholders meet the definition of insider under the NYUVTA because the 2021 Noteholder Group, separately and as agent of the 2021 Noteholders, utilized its leverage to control the Company which resulted in a transaction that violates the Company's other obligations and its duties to its creditors under applicable law, and that puts the Company on the path to being unable to pay its other debts in full.

85.     In addition, the 2021 Noteholder Group and the 2021 Noteholders also meet the definition of "insider" as parties that used their relationship to the Company to negotiate the Exchange Offers on a non-arm's length basis.

86.     Under NYUVTA § 274(b), the Exchange Offers contemplate a transfer of Company assets to the 2021 Noteholder Group and the 2021 Noteholders.

87.     The 2021 Noteholder Group is an insider by virtue of exercising control over the Company and in collusion with Company management.  The Company is insolvent, the insolvency is based on publicly available information, and the 2021 Noteholder Group (which has had unfettered access to the Company's financials) knows of the Company's insolvency.

88.     As a direct and proximate result of the foregoing, all of the Exchange Offers are voidable as fraudulent transfers and insider preferences if consummated.  Plaintiffs are entitled to a declaratory judgment that the Exchange Offers would be voidable as an insider preference under N.Y. Debt. & Cred. Law § 274.

## FIFTH CLAIM FOR RELIEF
(For Declaratory Relief—
Actual Fraudulent Transfer under NYUVTA § 273(a))

89.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 88 herein.

90.     Under New York law, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . . if the debtor made the transfer or incurred the obligation . . . . with actual intent to hinder, delay or defraud any creditor of the debtor."  N.Y. Debt. & Cred. Law § 273

91.     The Exchange Offers demonstrate the intent to, and effectively do, hinder, delay or defraud the 2024 Noteholders.  Among the badges of fraud identified by NYUVTA, the following apply here, among others:

(a)     The Exchange Offers transfer liens, stock and control to the 2021 Noteholders and the 2021 Noteholder Group, which are insiders as defined by NYUVTA § 270(h)(2)(iii) and relevant case law;

(b)     The Company has been sued and threatened with suit by the 2024 Noteholders;

(c)     The Exchange Offers transfer the Company's crown jewels (Intralot US and Intralot Tech), with Intralot US representing more than 70% of its EBITDA and earnings, and Intralot Tech representing a significant but undetermined value. Through the Exchange Offers, the Company both grants a lien on the Intralot US assets, and also transfers to the 2021 Noteholder Group and the Cross Holders

significant potential upside equity value in Intralot US in a future public offering or liquidity event;

(d)    The value transferred to the 2021 Noteholder Group, the 2021 Noteholders and the Cross Holders under the Exchange Offers through liens, stock, and control is not reasonably equivalent to the value received by the Company in exchange;

(e)    The Company is demonstrably insolvent.  At a minimum, the Company will be rendered insolvent shortly after the consummation of the Exchange Offers;

(f)    The Exchange Offers contemplate the imposition of additional substantial debt; and

(g)    The Exchange Offers have the effect of transferring the essential assets of the Company to the 2021 Noteholders and the Cross Holders through the proposed liens and pledges.  The 2021 Noteholders are themselves insiders via actual control or otherwise, including as a result of the Exchange Offers.

N.Y. Debt. & Cred. Law § 273.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

**A.**    On the First Claim for Relief, a declaration that that the Exchange Offers constitute a breach of Section 4.17 of the 2024 Indenture and for injunctive and other relief.

**B.**    On the Second Claim for Relief, a declaration that the Exchange Offers constitute a breach of Section 4.10 of the 2024 Indenture and for injunctive and other relief.

**C.**    On the Third Claim for Relief, a declaration that the Exchange Offers constitute a Change of Control under the 2024 Indenture and for injunctive and other relief.

**D.**    On the Fourth Claim for Relief, a declaration that the Exchange Offers would effectuate an insider preference that would be voidable under NYUVTA and for injunctive and other relief.

**E.**    On the Fifth Claim for Relief, a declaration that the Exchange Offers would effectuate an actual fraudulent transfer that would be voidable under NYUVTA and for injunctive and other relief.

**F.**    Such other and further relief as the Court deems appropriate.

Respectfully submitted this 28th day of July, 2021.

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: _____
Dennis Hranitzky
Patricia B. Tomasco
Crystal Nix-Hines (*pro hac vice to be filed*)
Kevin Reed
Debra O'Gorman
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100
Email:  dennishranitzky@quinnemanuel.com
          pattytomasco@quinnemanuel.com
          crystalnixhines@quinnemanuel.com
          kevinreed@quinnemanuel.com
          debraogorman@quinnemanuel.com

*Attorneys for Plaintiffs*