UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORTHLIGHT EUROPEAN FUNDAMENTAL
CREDIT FUND, HCN LP, and BARDIN HILL
EVENT-DRIVEN MASTER FUND LP

                              Plaintiffs,

                   -against-

INTRALOT CAPITAL LUXEMBOURG S.A.,
INTRALOT S.A., INTRALOT GLOBAL
HOLDINGS B.V., INTRALOT, INC., INTRALOT
US SECURITIES B.V.,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/2021

1:21-cv-06437 (MKV)

ORDER DENYING APPLICATION
FOR TEMPORARY
RESTRAINING ORDER

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiffs, holders of less than four percent of a series of debt notes issued by Defendants and scheduled to mature in 2024 (the "2024 Notes"), moved for an order enjoining the closing of an exchange offer transaction related both to notes that mature in 2021 (the "2021 Notes") and the 2024 Notes. The transaction was announced in January 2021 and was scheduled to close on August 3, 2021.

      Plaintiffs filed their complaint on July 28, 2021. The complaint includes five causes of action for declaratory and injunctive relief and damages. Specifically, the complaint alleges three claims that Defendants, through the exchange offer transaction, have breached or will breach terms of the Indenture governing the 2024 Notes. Cpl. ¶¶ 64-80. The complaint then also alleges two claims under the New York Uniform Voidable Transactions Act ("NYUVTA"), alleging that the exchange offer constitutes improper insider preferences and an actual fraudulent transfer. Cpl. ¶¶ 81-91.

Plaintiffs filed their motion for a temporary restraining order and preliminary injunction on July 29, 2021. *See* ECF Nos. 19-22.[1] After communicating with the Court and giving notice of the motion to Defendants as the Court directed, Plaintiffs reported that the parties had agreed to an August 2, 2021 hearing on Plaintiffs' motion. Before the hearing, Defendants filed their opposition.[2] *See* ECF Nos. 27, 29. The morning of the hearing, Plaintiff filed an additional, unauthorized declaration responding to certain allegations in Defendants' opposition (the "Noh Declaration").[3] *See* ECF No. 30 ("Noh Decl.").

The Court held a hearing on Plaintiffs' motion on August 2, 2021. No witnesses were proffered by Plaintiffs in support of their motion. Defendants reserved the right to cross-examine Plaintiffs' declarants, Kevin Reed and Patricia Tomasco, and to call their own witnesses, but ultimately no live testimony was proffered. At the conclusion of the hearing, the Court denied Plaintiffs' motion. This order constitutes the Court's findings of fact and conclusions of law relevant to the denial of the motion. *See* Fed. R. Civ. P. 52(a)(2).

**I.       Findings of Fact – The Exchange Offer Transaction**

Because the parties in this case do not dispute the facts of the exchange offer, the Court adopts the facts as stated in the Complaint for the purposes of this motion. *See Featherstone v. Barash*, 345 F.2d 246, 250 (10th Cir. 1965) ("[I]f there is no dispute between the parties about the facts, allegations of the complaint may be accepted as true, thus eliminating the necessity of formal findings."); *Carpenters' Dist. Council, Detroit, Wayne & Oakland Ctys. & Vicinity v.*

---

[1] The Court refers to Plaintiffs' Memorandum of Law in Support of their motion as "Pl. Br."

[2] The Court refers to Defendants' Memorandum of Law in Opposition to the motion as "Opp."

[3] The Court's Order setting the August 2 hearing stated unequivocally that "[t]here will be no reply permitted." *See* Order, ECF No. 18. Plaintiffs nonetheless sent the Noh Declaration to the Court by email before the August 2 hearing, and later filed it on the ECF docket at the Court's direction. As is evidenced below, in the Court's view, the Noh Declaration only weakened Plaintiffs' position by emphasizing Plaintiffs' severe delay in bring this action.

*Cicci*, 261 F.2d 5, 8 (6th Cir. 1958) ("It is true that if there is no dispute between the parties about the facts, the allegations of a complaint may be accepted as true, thus eliminating the necessity of formal findings...."). However, the specific details of the exchange offer transaction are relevant to the Court's analysis on the merits of Plaintiffs' application. As a result, the Court restates and summarizes the major features of the transaction in question here based on the allegations in the Complaint, while using the Sfatos Declaration[4] for additional detail as discussed above.

Plaintiffs allege that Defendants, all entities associated with the Greek gambling and gaming company Intralot,[5] sought to defraud holders of the 2024 Notes in connection with an exchange offer related to both the 2021 and 2024 Notes. Before the exchange offer transaction at issue here, the 2021 Notes and the 2024 Notes ranked *pari passu* in right of payment and were guaranteed by the same Intralot entities, notably including Intralot, Inc. Cpl. ¶¶ 1, 29, 31, 60. Also before the exchange offer, neither the 2021 Notes nor the 2024 Notes were secured, and a failure to pay principal on the 2021 Notes would constitute an Event of Default on the 2024 Notes. Cpl. ¶¶ 4, 31; *see also* Complaint, Ex. A ("Indenture") § 6.01(a)(v). Intralot devised the exchange offer to eliminate the risk that it would default on the 2021 Notes when they mature in September 2021. Cpl. ¶¶ 31-32. After almost a year of negotiations with noteholders, including Plaintiffs here, the transaction was put into effect by the signing of a Lock-Up Agreement in January 2021, which was announced publicly. Cpl. ¶ 33; *see also* Sfatos Decl. ¶ 36. The Exchange Offer officially opened—that is, notes could be tendered for exchange—on July 1,

---

[4] As used herein "Sfatos Declaration" or "Sfatos Decl." refers to the Declaration of Chrysostomos D. Sfatos in Opposition to the Motion, ECF No. 29. During the August 2, 2021 hearing on Plaintiffs' motion, both Plaintiffs and Defendants referred to the declaration for the facts it contained about the exchange offer transaction. In light of that, the Court refers to the declaration to the extent it contains details of the transaction not included elsewhere.

[5] As used herein, "Intralot" refers to the combined enterprise of all Defendants and to the leadership of that company, namely the executives and Board of Directors of Intralot S.A.

3

2021, and closed on July 29, 2021. Cpl. ¶ 36; Sfatos Decl. ¶¶ 26, 39. The transaction was scheduled to close on August 3, 2021. Sfatos Decl. ¶¶ 26, 39.

The exchange offer transaction has two components—one each for the 2021 Notes and the 2024 Notes. First, holders of the 2021 Notes may exchange their notes for a new series of preferential secured notes (the "Preferred Notes") at a rate of €0.82 in Preferred Notes for every euro of 2021 Notes tendered. Cpl. ¶¶ 38-40; Sfatos Decl. ¶ 26. The Preferred Notes will be issued by Defendant Intralot, Inc., Intralot's United States operating subsidiary, and will be secured by a lien on the assets of that company. Cpl. ¶¶ 38-39. The Preferred Notes will mature in 2025, but the maturity date on any 2021 Notes that are not tendered will be extended to 2050. Sfatos Decl. ¶ 26. Second, some, but not all, of holders of the 2024 Notes may exchange their notes for equity shares of Defendant Intralot U.S. Securities B.V., which is an indirect parent company of Intralot, Inc. Cpl. ¶¶ 41-42; Sfatos Decl. ¶ 26. The 2024 Notes may be exchanged at a rate of 0.2894 shares per euro of notes, but the offer is capped so that no more than €169.1 million of the 2024 Notes may be tendered (there is more than €450 million of 2024 Notes outstanding). Any 2024 Notes that are not tendered will be unaffected except that Defendant Intralot, Inc. will no longer be a guarantor of the 2024 Notes. Sfatos Decl. ¶ 26.

As part of the exchange offer transaction, Defendant Intralot, Inc., which is currently designated as a "Restricted Subsidiary" for the purposes of the 2024 Notes Indenture, will be designated an "Unrestricted Subsidiary." Cpl. ¶ 50. This will allow Intralot, Inc. to, among other things, incur a lien in order to pledge its assets as security on the Preferred Notes. Cpl. ¶¶ 5, 50, 54; *see also* Indenture § 4.10 (prohibiting certain liens only against "Restricted Subsidiaries"). Pursuant to Section 4.17 of the Indenture,

> The Board of Directors of the Company may designate any Restricted Subsidiary . . . to be an Unrestricted Subsidiary (a "Designation") if that Designation would

> not cause a Default. If a Restricted Subsidiary is designated as an Unrestricted Subsidiary, the Fair Market Value of the Company's interest in the Subsidiary so designated shall be deemed to be an Investment made as of the time of the Designation and shall reduce either (i) the amount available for Restricted Payments under Section 4.07 of this Indenture or (ii) the amount available for Permitted Investments, as determined by the Company. That Designation shall only be permitted if the Investment would be permitted at that time and if the Restricted Subsidiary otherwise meets the definition of an Unrestricted Subsidiary.

Indenture § 4.17. The provision essentially means that a subsidiary may only be designated as "unrestricted" if the Fair Market Value (a term defined in the Indenture) of the subsidiary is lower than either of two other amounts in the Indenture (the "amount available for Restricted Payments" and the "amount available for Permitted Investments").[6] *See* Cpl. ¶ 53. The Indenture provides that the Intralot Board of Directors has sole discretion to determine the Fair Market Value provided that they do so "in good faith." *See* Indenture §§ 1.01 (definition of "Fair Market Value), 4.17. In this case, the Intralot Board determined that Intralot, Inc. was eligible to be designated an unrestricted subsidiary based on two independent financial evaluations. Sfatos Decl. ¶¶ 29-31.

The entire exchange offer transaction is conditioned upon participation by at least 90% of the holders of 2021 Notes and at least 13.64% of 2024 Notes. Sfatos Decl. ¶ 27. According to Defendants, those thresholds have been satisfied and the transaction was on track to close on August 3, 2021 absent an order to the contrary. Sfatos Decl. ¶ 39. Plaintiffs initiated litigation over the transaction because, in their view, the exchange offer wrongfully alters the credit protection on their notes and was negotiated in a collusive manner with insider creditors to those creditors' benefit.

---

[6] Defendants argue that these amounts may be combined, if necessary, to permit a subsidiary to become unrestricted. *See* Opp. at 18-19. Because this issue is not necessary to resolve Plaintiffs' motion, the Court does not consider it here.

## II.     Standard

To prevail on a motion for a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in plaintiff's favor; (2) irreparable harm if an injunction is not entered; (3) a balance of hardships that tips in the plaintiff's favor, regardless of the likelihood of success; and (4) that an injunction is in the public interest.  *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 449 (2d Cir. 2021) (quoting *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015)).  Among these elements, "irreparable harm is 'the single most important prerequisite for a preliminary injunction.'"  *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)); *Willis Re Inc. v. Herriott*, __ F. Supp. 3d __, 2021 WL 3204764, at *10 (S.D.N.Y. 2021) (same).  The burden of proof in connection with an application for a temporary restraining order or preliminary injunction rests solely on the party seeking the extraordinary relief.  *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 443 (1974) (burden of proof is on the party seeking a preliminary injunction, not on opposing party to show that the injunction is not warranted).

## III.    Conclusions of Law

Plaintiffs have failed to meet the burden necessary to secure preliminary injunctive relief.  While certain of Plaintiffs' claims raise substantially serious questions as to their merits, Plaintiffs have failed to establish a risk of irreparable harm or a balance of the equities in their favor.

As an initial matter, at this stage, the Court does not find that Plaintiffs lack standing to bring their claims. Defendants argued that the "No Action Clause" in the 2024 Notes Indenture barred Plaintiffs' claims in whole or in part. Opp. at 11-14. However, the Court agrees with Plaintiffs that at least their statutory NYUVTA claims are not subject to the No Action Clause limitation on actions because those claims arise out of the 2024 Notes themselves, not the Indenture. *See Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 559 (2014); *see also* Pl. Br. at 11-12. Because the Court determines that the contract claims are not likely to succeed on the merits, it does not consider the Plaintiffs' argument that compliance with the No Action Clause is excused for the contract claims due to a conflict of interest for the Trustee. *See* Pl. Br. at 10-11.

*Likelihood of Success on the Merits or a Substantially Serious Question*

Plaintiffs only need to demonstrate a likelihood of success on the merits of one claim to warrant injunctive relief. *Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 376 (S.D.N.Y. 2009). Here, the Court cannot determine that Plaintiffs are likely to succeed on any of their contract claims related to the Indenture governing the 2024 Notes or that, on this record, Plaintiffs have raised a serious question as to the merits of the contract claims. However, the Court does conclude that Plaintiffs have raised such serious questions as to their NYUVTA claims.

On the present record, the Court cannot determine that Plaintiffs' contract claims are likely to succeed on the merits. Plaintiffs' first claim alleges that the exchange offer transaction violates Section 4.17 of the 2024 Notes Indenture by designating Intralot Inc. as an unrestricted subsidiary when it is ineligible to be so designated. Cpl. ¶¶ 64-67. The 2024 Notes Indenture vests the determination regarding a subsidiaries' eligibility to be designated as an unrestricted

subsidiary in the Intralot Board as long as the Board operates in good faith. *See* Indenture §§ 1.01, 4.17. In support of their argument, Plaintiffs take issue only with the methodology of the independent financial evaluations the Intralot Board used to make its conclusions. *See* Pl. Br. at 12-13. Plaintiffs do not argue that the evaluations were not independent. Nor do Plaintiffs provide any evidence or testimony, other than an attorney's say-so that the Intralot Board acted in bad faith when considering the financial evaluations, which would breach the Indenture. Similarly, Plaintiffs' application is unsupported by any evidence about how the financial evaluation would have changed using what Plaintiffs argue to be the correct methodology. In short, Plaintiffs have done nothing to show that the Intralot Board's decision that Intralot, Inc. is eligible to be designated an unrestricted subsidiary was made in bad faith or is wrong. Plaintiffs have not carried their burden and the Court cannot find a likelihood of success on this claim.

Similarly, the Court cannot find a likelihood of success on either of the other Indenture-related contract claims. Plaintiffs' third cause of action, concerning Change in Control provisions of the Indenture (Sections 4.15 and 5.01), *see* Cpl. ¶¶ 73-80, is not addressed at all in Plaintiffs' motion papers. As a result, the Court deems the argument that this claim is likely to succeed waived for the purposes of this motion. Plaintiffs' only remaining contract claim, alleging that the pledge of assets of Intralot, Inc. violates the limitations on liens in the Indenture, *see* Cpl. ¶¶ 68-72, also is not likely to succeed. The provision to which Plaintiffs point, Section 4.10 of the Indenture, by its terms only limits the actions of "Restricted Subsidiaries." *See* Indenture § 4.10. Because the Court finds for the purposes of this motion that Plaintiffs are not likely to succeed on their claim that Intralot, Inc. must be a restricted subsidiary, it follows that Plaintiffs are not likely to succeed on this claim.

Plaintiffs' NYUVTA claims fare slightly better. While the Court has certain reservation about the claims, the Court does find that there are substantially serious questions on the merits of the claim. With respect to Plaintiffs' first NYUVTA claim, that the exchange offer transaction constitutes avoidable insider preference, *see* Cpl. ¶¶ 81-88, Plaintiff has alleged facts indicating a probability that Intralot negotiated with creditors who exercised effective control over the company. Cpl. ¶¶ 6, 32, 36. Plaintiffs essentially allege that the 2021 Noteholders with whom Intralot primarily negotiated the exchange offer transaction effectively could use their debt holdings and the imminent threat of maturity on the 2021 Notes to coerce Intralot into a collusive deal for their own benefit and to the detriment of the 2024 Notes. *See* Cpl. ¶¶ 1-3, 9. On the present record, these allegations at least raise a serious issue with regard to the merits that Defendants did not negotiate at arm's length with the 2024 Noteholders. *See In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 396-97 (3d Cir. 2009) (holding that the question for insider status "is whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." (alterations in original) (quoting *In re U.S. Med., Inc.*, 531 F.3d 1272, 1277 (10th Cir. 2008))); *In re Kunz*, 489 F.3d 1072, 1079 (10th Cir. 2007) ("A person or entity not made an insider per se can still be treated as an insider on a showing that the person or entity in fact had a relationship with the debtor that was sufficiently close that the two were not dealing at arm's length.").

There are also sufficiently serious issues as to the merits of Plaintiffs' second NYUVTA claim based on Plaintiffs' allegations and the record now before the Court now. This claim seeks relief on the basis that the exchange offer transaction is a fraudulent transaction intended to "hinder, delay or defraud any creditor of the debtor." Cpl. ¶¶ 81, 89-91; N.Y. Debt. & Cred. Law

§ 273(a)(1). The NYUVTA includes several non-exhaustive factors that courts consider as indicia of fraud in a transaction:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

N.Y. Debt. & Cred. Law § 273(b)(1)-(11). In the Court's view, Plaintiffs' complaint and the record on this motion raises a substantially serious question of whether 1) Defendants transacted with insiders, 2) after they were threatened with suit, 3) for a substantial portion of Defendants' assets (Plaintiffs' allege that Intralot, Inc. comprises 70% if Intralot's global earnings), 4) while Intralot is insolvent. These factors, if proven, give rise to an inference that the exchange offer transaction was at least in part an effort to defraud the 2024 Noteholders.

In sum, based on the record on this motion, the Court concludes that there are substantially serious issues only with regard to the merits of Plaintiff's NYUVTA claims.

***Irreparable Harm***

Despite a serious question on the merits of two of their claims, Plaintiffs' motion nonetheless fails because they have failed to allege irreparable harm absent an injunction. As noted above, the existence of irreparable harm is "the single most important prerequisite for a preliminary injunction." *Faiveley*, 559 F.3d at 118. Plaintiffs claim that they will be irreparably

harmed by the elimination of credit protection on their notes and because, despite that their damages likely are measurable in monetary terms, Plaintiffs may be unable to recover damages after discovery and trial because the exchange offer and intervening payments of interest on the surviving 2021 and 2024 Notes and the Preferred Notes could irreparably change Defendants' financial outlook and the ability to secure payment.  Instead, through their motion, Plaintiffs seek an order preventing the exchange offer transaction from being consummated.

Plaintiffs cannot make a showing or irreparable harm here because there is an adequate remedy at law with regard to the NYUVTA claims, the only two claims as to which the Court finds any likelihood of success or serious questions on the merits.  Specifically, the NYUVTA provides a successful plaintiff the remedy of unwinding the challenged transfer.  The law is clear that where a remedy at law exists, courts cannot issue extraordinary injunctive relief.  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146–47 (2d Cir. 2020) ("[I]njunctive relief is only proper when a plaintiff, lacking an adequate remedy at law, is likely to suffer from injury at the hands of the defendant if the court does not act in equity."); *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir. 1995) ("[I]njunctive relief where an adequate remedy at law exists is inappropriate."). Here, Plaintiffs' application for a temporary restraining order seeks to delay and prevent the exchange offer transaction from closing.  Plaintiffs' claims under the NYUVTA would provide precisely that relief, albeit after trial.  *See* N.Y. Debt. & Cred. § 276(a)(1) ("In an action for relief against a transfer or obligation under this article, a creditor . . . may obtain avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim").  Because a remedy at law exists that provides the relief Plaintiffs request here, Plaintiffs cannot establish irreparable harm.  Lacking that, Plaintiffs' application for a temporary restraining order fails on this ground.

*Balance of the Equities*

Even if Plaintiffs were able to show irreparable harm, the application for emergency relief still fails because the balance of the equities and hardships associated with Plaintiffs' request lie solely in Defendants' favor.  Both Plaintiffs and Defendants submit that they will suffer immediate and potentially long-lasting monetary and business harms if the Court rules against them.  *Compare* Pl. Br. at 21-22 (harm to Plaintiffs), *with* Sfatos Decl. ¶¶ 40-48 (harm to Defendants).  However, the balance tips significantly against Plaintiffs because of their delay in bringing this application.  As noted above, Plaintiffs concede that Defendants began negotiating with noteholders, including Plaintiffs, about the exchange offer transaction in early 2020.  Cpl. ¶ 32; Noh Decl. ¶¶ 2-3.  Intralot then signed a Lock-Up Agreement finalizing the exchange offer in January 2021.  Cpl. ¶ 33.  By Plaintiffs' own admission, they then waited six months to even inquire about the exchange offer, which was only triggered by the opening of the offer itself on July 1, 2021.  Noh Decl. ¶¶ 10-14.  Plaintiffs then waited four weeks from the exchange offer opening to file their lawsuit and to seek injunctive relief.  *See* Noh Decl. ¶¶ 13-15.

At a minimum then, despite knowing of the contemplated transaction since January 2020, and the precise offer being announced in January 2021 and opened on July 1, 2021, Plaintiffs delayed in bringing their case and this application until July 29, three days before the exchange offer was scheduled to close.  Importantly, Plaintiffs likely also could have and should have brought their case in January 2021 when the final Lock-Up Agreement related to the exchange offer transaction was signed and made public.  From this date, Plaintiffs delayed almost seven months before filing anything in Court to protect their rights.  This extreme delay merits denying Plaintiffs' application.  *See Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21-cv-00038-MKV, 2021 WL 535485, at *7 (S.D.N.Y. Feb. 12, 2021) (denying motion, in part,

because Plaintiff delayed seeking relief for seven months); *Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc.*, No. 16-cv-5079 (JGK), 2016 WL 4367990, at *4 (S.D.N.Y. Aug. 12, 2016) (same – six months); *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 403 (E.D.N.Y. 2011) (same – five months).

Plaintiffs' only excuse for their delay in filing is that for months before the exchange offer was announced and thereafter they were engaged in settlement discussions with Defendants that they hoped would be fruitful. However, this excuse is belied by Plaintiffs' other admission that they heard nothing from Defendants for approximately six months between the public announcement of the final Lock-Up Agreement in January 2021 and the opening of the exchange offer in July 2021. This unexplained period also sets this case apart from those where courts excuse delay based on *bona fide* settlement discussions. *See Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011); *see also CSI Entm't, Inc. v. Anthem Media Grp., Inc.*, No. 15-CV-3508 (AMD) (RER), 2016 WL 11263667, at *6 (E.D.N.Y. Dec. 30, 2016) (collecting cases). In short, it strains credulity that Plaintiffs were engaged in substantive negotiations with parties from whom they had not heard for that period of time. And because Plaintiffs offer no other excuse for their delay, the Court finds that their lack of diligence weighs heavily against them for the purposes of this motion.

## CONCLUSION

For the reasons stated here, Plaintiffs have failed to meet their burden to establish irreparable harm or a balance of the equities in their favor. As a result, the motion for a temporary restraining order is DENIED. While there appears on this record to be substantially serious issues with regard to the merits of certain of Plaintiffs' claims, that does not overcome the clear deficiencies with regard to the remaining element of Plaintiffs' motion for injunctive relief.

**SO ORDERED.**

**Date: August 4, 2021**
**New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**