UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTHLIGHT EUROPEAN FUNDAMENTAL CREDIT FUND, HCN LP, BARDIN HILL EVENT-DRIVEN MASTER FUND LP, HALCYON EVERSOURCE CREDIT LLC, HALCYON VALLEE BLANCHE MASTER FUND LP, HDML FUND II LLC, CQS CREDIT OPPORTUNITIES MASTER FUND, CQS ACS FUND, CQS DIRECTIONAL OPPORTUNITIES MASTER FUND LIMITED and BIWA FUND LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>INTRALOT CAPITAL LUXEMBOURG S.A., INTRALOT S.A., INTRALOT GLOBAL HOLDINGS B.V., INTRALOT, INC., INTRALOT US SECURITIES B.V., INTRALOT U.S. HOLDINGS B.V., and THE LAW DEBENTURE TRUST CORPORATION P.L.C.,<br><br>Defendants. | Case No. 1:21-cv-06437-MKV |

## FIRST AMENDED COMPLAINT (CORRECTED)

Plaintiffs Northlight European Fundamental Credit Fund, HCN LP, Bardin Hill Event-Driven Master Fund LP, Halcyon Eversource Credit LLC, Halcyon Vallee Blanche Master Fund LP, HDML Fund II LLC, CQS Credit Opportunities Master Fund, CQS ACS Fund, CQS Directional Opportunities Master Fund Limited and Biwa Fund Limited, (collectively, "**Plaintiffs**"), by and through their undersigned attorneys, allege as follows for their First Amended Complaint against Intralot Capital Luxembourg S.A. (the "**Issuer**"), Intralot S.A. (the "**Company**"), Intralot Global Holdings B.V. ("**IGH**"), Intralot, Inc. ("**Intralot US**"), Intralot US Securities B.V. ("**TopCo**") and Intralot U.S. Holdings B.V. ("**HoldCo**") (collectively the "**Intralot Enterprise**") and The Law Debenture Trust Corporation p.l.c. (the "**Security Agent**" and with the Intralot Enterprise, the "**Defendants**"):

## NATURE OF THE ACTION

1.        Plaintiffs are holders of beneficial interests in certain €500,000,000 5.25% Senior Notes due 2024 (the "**2024 Notes**") issued pursuant to an indenture dated September 20, 2017 (the "**2024 Indenture**").[1]  Through this action, Plaintiffs seek to avoid transfers made as part of the consummation of a collusive and coercive integrated transaction engineered by Defendants which impermissibly stripped the 2024 Notes of their bargained-for credit protection and transferred that protection to the Security Agent on behalf of holders of a separate series of notes issued by the same Issuer and ranking *pari passu* with the 2024 Notes, but which matured last year—*i.e.*, the €250,000,000 6.75% Senior Notes due in September 2021 (the "**2021 Notes**").

2.        As the maturity date for the 2021 Notes approached, the Intralot Enterprise recognized that it lacked the means to pay them upon their impending maturity.  Typically, a debtor

---

[1]  A true and correct copy of the 2024 Indenture is attached hereto as Exhibit A.

facing such a prospect would either renegotiate its outstanding debt in a manner that grants comparable treatment to similarly-situated creditors, or file for court-supervised reorganization. The Intralot Enterprise apparently viewed the first of these options as too expensive and were unwilling to accept the loss of current ownership's control over the enterprise that would result from a reorganization. So, in collusion with certain holders of the 2021 Notes, Defendants devised a third option: they induced holders of the 2021 Notes (the "**2021 Noteholders**") to refinance that debt by offering them a sweetheart deal at the expense of the holders of the 2024 Notes (the "**2024 Noteholders**").

3.　　　　The terms of the collusive bargain—which were determined after Defendants negotiated exclusively with a group of 2021 Noteholders (despite multiple attempts by Plaintiffs and certain other 2024 Noteholders to engage in negotiations)—were set forth in the Exchange Offer and Consent Solicitation Memorandum and the Information Memorandum with respect to the 2021 Notes (the "**2021 Exchange Offer**"), and in the Exchange Offer Memorandum and Information Memorandum with respect to the 2024 Notes (the "**2024 Exchange Offer**" and together with the 2021 Exchange Offer, the "**Exchange Offers**"). These documents constitute one integrated transaction, with both Exchange Offers contingent on each other.

4.　　　　In exchange for surrendering their 2021 Notes—and thus allowing the Issuer to avoid the looming default and reorganization which would inevitably have resulted—holders of the 2021 Notes were allowed to complete an Exchange Offer in which they received Senior Secured PIK Toggle Notes (the "**New Preferential Secured Notes**") issued by Intralot US. In contrast with the 2021 Notes, which were unsecured and rank equally with all other unsecured debt (such as the 2024 Notes), the New Preferential Secured Notes are secured by the assets and

equity of Intralot US, which is the crown jewel of the Intralot Enterprise and generates over 70% of Intralot Enterprise's EBITDA and earnings.

5.  The 2024 Noteholders, for their part, were saddled with the Hobson's choice represented by the 2024 Exchange Offer of either: (a) exchanging some undetermined portion of their 2024 Notes for a minority equity interest in an indirect parent company of Intralot US, and thereby accepting a structurally subordinated position relative to the 2021 Notes (and additionally, equity always ranks behind debt), or (b) keeping their 2024 Notes, but without recourse to Intralot US, as pursuant to the 2021 Exchange Offer, that crown jewel entity was released as a guarantor of the 2024 Notes and its assets and its stock were pledged to secure the New Preferential Secured Notes.  In other words, by virtue of the scheme's consummation and the transfers occurring thereunder, the entirety of the half a billion euros owed to the 2024 Noteholders was effectively rendered uncollectable.  Plaintiffs and the other 2024 Noteholders no longer rank equally with the former 2021 Noteholders but have seen their rights stripped of the most valuable aspects of the credit protections they previously enjoyed and relied upon when investing in the 2024 Notes and were left with effectively uncollectable claims subordinated to the New Preferential Secured Notes.

6.  There is one small subset of 2024 Noteholders who were spared the devastating effects of this collusive and illicit transaction and were participants in it.  A group of entities that directly or through affiliates held substantial positions in the 2021 Notes in addition to their 2024 Notes—BP Holdings K. LP, Centre Street Investment S.A.R.L., the Indiana Public Retirement System and SCF Investment II S.A.R.L. (collectively, the "**Cross Holders**")—used the leverage afforded to them by their substantial holdings in the 2021 Notes to negotiate for themselves a "backstop" arrangement.  Under this sweetheart deal, in exchange for committing to vote their

2024 Notes in favor of the proposed transaction, they received special rights to appoint directors of Intralot US and, on information and belief, monetary consideration. These preferential terms were not offered to Plaintiffs or to the overwhelming majority of 2024 Noteholders. In doing so, these 2021 Noteholders became insiders of the Intralot Enterprise, including Intralot US, and richly rewarded themselves.

7.      This scheme violated a number of the covenants in the 2024 Indenture, which governs the 2024 Notes held by Plaintiffs.

- It violated Section 4.10, the indenture covenant that prohibits the obligors of the 2024 Notes from creating a security interest (*i.e.*, in the assets and equity of Intralot US) for the benefit of the 2021 Noteholders (and other similarly-situated creditors) without creating an equal and ratable security interest for the benefit of the 2024 Noteholders.

- It violated Section 4.17 of the 2024 Indenture, which prohibits the Issuer from designating its key revenue-generating affiliate, Intralot US, as an "Unrestricted Subsidiary"—and therefore no longer a guarantor of the 2024 Notes.

- It violated provisions in the 2024 Indenture that require the Issuer to redeem the 2024 Notes in the event of the change of control of Intralot US, which occurred when control of that entity was handed over to the former 2021 Noteholders, including as a result of Intralot US and its subsidiaries being severed from the companies providing credit support to the 2024 Notes and granting security interest for the benefit of former 2021 Noteholders. Importantly, in addition to a breach having arisen from the Company's failure to honor its redemption obligations to the 2024 Noteholders, the former 2021 Noteholders (including the Cross Holders) as transferees of control over Intralot US, which constituted a disposition of substantially all of the properties or assets of the Company, have incurred the obligations of the Company to the 2024 Noteholders, as successors to the Company's obligations pursuant to Section 5.01 of the 2024 Indenture.

8.      As the deadline for the consummation of the Exchange Offers approached, certain of the Plaintiffs commenced this Action by filing a complaint seeking declaratory and injunctive

relief on the grounds that the Exchange Offers, if completed, would breach the 2024 Indenture and that transfers contemplated by the transactions would be avoidable under New York's version of the Uniform Voidable Transactions Act, N.Y. Debt. & Cred. Law §§ 270-281. Dkt. No. 1. Although the Court denied injunctive relief, it recognized the viability of claims under the Uniform Voidable Transactions Act.

9.        The Exchange Offers nevertheless were consummated over the objection of certain holders of 2024 Notes, resulting in the transfer of assets and stock of Intralot US to the 2021 Noteholders (the "**Transfers**"). These transfers constitute an impermissible insider preference and fraudulent transfer in violation of Uniform Voidable Transactions Act § 273(a) and 274(b), both under New York law (N.Y. Debt. & Cred. Law §§ 270-281 ("**NYUVTA**")) and Georgia law (Ga. Code §§ 18-2-70 *et seq*. ("**GAUVTA**")).

10.        The Intralot Enterprise's collusive scheme was perpetrated with the direct involvement of  The Law Debenture Trust p.l.c., which served as trustee for both the 2021 Notes and the 2024 Notes[2], and is the Security Agent for the New Preferential Secured Notes.  It is the entity to whom Intralot US transferred interests in its assets and Intralot U.S. Holdings B.V. pledged all of the stock in Intralot US.

11.        Plaintiffs seek the entry of a declaration that the Exchange Offers violated the 2024 Indenture and judgment avoiding the Transfers under the NYUVTA and GAUVTA, and such other and further relief as the Court deems appropriate.

---

[2]  The Law Debenture Trust p.l.c. was replaced as the trustee for the 2024 Notes by UMB Bank just days ago on January 28, 2022.  Plaintiffs anticipate that UMB Bank will very shortly intervene in this action and seek leave to amend the complaint to assert these claims.

## THE PARTIES

12.      Plaintiff Northlight is incorporated in the Cayman Islands and has its principal place of business at Ugland House, P.O. Box 309, Georgetown, Grand Cayman, Cayman Islands KY1-1104. Northlight is a holder of beneficial interests in the 2024 Notes.

13.      Plaintiff HCN LP is a limited partnership organized under the law of the Cayman Islands and based on the citizenship of its partners, upon information and belief, is a citizen of the Cayman Islands, the United Kingdom and the State of Delaware and is not a citizen of the State of Georgia.  HCN LP is a holder of beneficial interests in the 2024 Notes.

14.      Plaintiff Bardin Hill Event-Driven Master Fund LP is a limited partnership organized under the laws of the Cayman Islands and based on the citizenship of its partners, upon information and belief, is a citizen of the Cayman Islands, and the States of Delaware, Florida, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, New Hampshire, Ohio, Puerto Rico, Rhode Island, Washington D.C., and Wisconsin, and is not a citizen of the State of Georgia.  Bardin Hill Event-Driven Master Fund LP is a holder of beneficial interests in the 2024 Notes.

15.      Plaintiff Halcyon Eversource Credit LLC is a limited liability company organized under the law of the State of Delaware and based on the citizenship of its members, upon information and belief, is a citizen of State of Delaware and Connecticut and is not a citizen of the State of Georgia.  Halcyon Eversource Credit LLC is a holder of beneficial interests in the 2024 Notes.

16.      Plaintiff Halcyon Vallee Blanche Master Fund LP is a limited partnership organized under the law of the Province of Ontario, Canada, and based on the citizenship of its partners, upon

information and belief, is a citizen of Canada, France, and Switzerland and is not a citizen of the State of Georgia. Halcyon Vallee Blanche Master Fund LP is a holder of beneficial interests in the 2024 Notes.

17.     Plaintiff HDML Fund II LLC is a limited liability company organized under the law of the State of Delaware and based on the citizenship of its partners, upon information and belief, is a citizen of the States of Delaware and California and is not a citizen of the State of Georgia. HDML Fund II LLC is a holder of beneficial interests in the 2024 Notes.

18.     Plaintiff CQS Credit Opportunities Master Fund is incorporated in Ireland and has its principal place of business at 6 Custom House Plaza, Harbourmaster Place, Dublin 1 Ireland. CQS Credit Opportunities Master Fund is a holder of beneficial interests in the 2024 Notes.

19.     Plaintiff CQS ACS Fund is incorporated in Ireland and has its principal place of business at 6 Custom House Plaza, Harbourmaster Place, Dublin 1 Ireland. CQS ACS Fund is a holder of beneficial interests in the 2024 Notes.

20.     Plaintiff CQS Directional Opportunities Master Fund Limited is incorporated in the Cayman Islands and has its principal place of business at Ugland House, P.O. Box 309, Georgetown, Grand Cayman, Cayman Islands KY1-1104. CQS Directional Opportunities Master Fund Limited is a holder of beneficial interests in the 2024 Notes.

21.     Plaintiff Biwa Fund Limited is incorporated in the Cayman Islands and has its principal place of business at Ugland House, P.O. Box 309, Georgetown, Grand Cayman, Cayman Islands KY1-1104. Biwa Fund Limited is a holder of beneficial interests in the 2024 Notes.

22.     Defendant, Intralot Capital Luxembourg S.A., the Issuer, is a public limited liability company incorporated under the law of the Grand Duchy of Luxembourg with its registered office at 46A, avenue J.F. Kennedy, L-1855 Luxembourg, and registered with the Luxembourg Register of Commerce and Companies under number B186753.  Intralot Capital Luxembourg S.A. is the Issuer of the 2024 Notes and the 2021 Notes.  Intralot Capital Luxembourg S.A. is a wholly-owned subsidiary of Intralot Global Securities B.V. ("**IGS**").

23.     Defendant Intralot S.A. (the Company) is a public limited liability company (société anonyme) incorporated under the laws of the Hellenic Republic with a principal place of business at 64, Kifissias Ave. & 3, Premetis Str., 112 57 Athens, Greece.  The Company is the parent company of the Issuer and a guarantor of the 2024 Notes.

24.     Defendant IGH (or Intralot Global Holdings B.V.) is a private limited company (*besloten vennootschap met beperkte aansprakelijkheid*) incorporated under the law of the Netherlands with a principal place of business at Delfandlaand 1, 1062 EA, Amsterdam, Netherlands.  IGH is a wholly-owned subsidiary of Intralot Global Securities B.V.  IGH is a Subsidiary Guarantor under the 2024 Notes, as that term is defined below.  IGH is an indirect parent company of Intralot US that caused a lien on 100% of the stock in Intralot US to be granted under the New 2021 Preferential Indenture, as that term is defined below, which benefitted the members of the 2021 Noteholder Group.

25.     Defendant Intralot US (or Intralot, Inc.) is a corporation organized and existing under the laws of the State of Georgia in the United States of America with a principal place of business at 11360 Technology Cir, Duluth, GA 30097.  Intralot US is a Subsidiary Guarantor under the 2024 Notes, as that term is defined below.  Intralot US is also the issuer under the indenture

for the New Preferential Secured Notes (the "**New 2021 Preferential Indenture**") and granted to the Security Agent liens to secure the New Preferential Secured Notes with substantially all of its assets.  Intralot US represents more than 70% of both the EBITDA and earnings of the group of entities supporting the 2024 Notes and is thus the economic engine and the crown jewel of the Intralot Enterprise.

26.     Defendant TopCo (or Intralot US Securities B.V.), is a private limited company incorporated under the law of the Netherlands with a principal place of business at Delfandlaand 1, 1062 EA, Amsterdam, Netherlands.  TopCo is a guarantor under the New 2021 Preferential Indenture and contributed collateral preferentially for the benefit of the New Preferential Secured Notes.

27.     Defendant HoldCo (or Intralot U.S. Holdings B.V.), is a private limited liability company (*besloten vennootschap met beperkte aansprakelijkheid*), incorporated under the law of the Netherlands with a principal place of business at Delflandlaand 1 Office 919 1062 EA, Amsterdam, Netherlands.  Intralot U.S. Holdings B.V. received the stock of Intralot U.S. from Intralot Global Holdings B.V. and then granted a lien on the stock of Intralot US to the Security Agent.

28.     Defendant The Law Debenture Trust Corporation p.l.c. is a limited liability incorporated in England and Wales with registered number 1675231, whose registered office is at Fifth Floor, 100 Wood Street, London EC2V 7EX, England.  The Law Debenture Trust Corporation p.l.c. served as trustee for both the 2021 Notes and the 2024 Notes during the Exchange Offers, and is the trustee and Security Agent for the New Preferential Secured Notes.

**STANDING**

29.     Plaintiffs are entitled to bring statutory claims relating to the 2024 Notes directly.

**JURISDICTION AND VENUE**

30.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.  Specifically, all but one of the Defendants is a foreign entity. Defendant Intralot US is incorporated and domiciled in the State of Georgia in the United States. None of the Plaintiffs are citizens of the State of Georgia.

31.     Plaintiff Northlight is incorporated in the Cayman Islands and has its principal place of business in the Cayman Islands.

32.     On information and belief, Plaintiff Bardin Hill Event-Driven Master Fund LP is a citizen of the Cayman Islands, United Kingdom and the States of Delaware, Florida, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, New Hampshire, Ohio, Puerto Rico, Rhode Island, Washington D.C., and Wisconsin.

33.     Plaintiff HCN LP is a citizen of the Cayman Islands, the United Kingdom and the State of Delaware.

34.     Plaintiff Halcyon Eversource Credit LLC is a citizen of the States of Connecticut and Delaware.

35.     Plaintiff Halcyon Vallee Blanche Master Fund LP is a citizen of Canada, France, and Switzerland.

36.     Plaintiff HDML Fund II LLC is a citizen of the States of Delaware and California.

37.      Plaintiff CQS Credit Opportunities Master Fund is incorporated in Ireland and has its principal place of business in Ireland.

38.      Plaintiff CQS ACS Fund, is incorporated in Ireland and has its principal place of business in Ireland.

39.      Plaintiff CQS Directional Opportunities Master Fund Limited is incorporated in the Cayman Islands and has its principal place of business in the Cayman Islands.

40.      Plaintiff Biwa Fund Limited, is incorporated in the Cayman Islands and has its principal place of business in the Cayman Islands.

41.      This Court has personal jurisdiction over the Issuer, the Company, IGH, and Intralot US because each of those Defendants agreed in Section 14.09 of the 2024 Indenture that "any suit, action or proceeding arising out of or based upon this indenture, any Guarantee or the notes may be instituted in any state or federal court in the Borough of Manhattan, New York, New York . . . and each of them irrevocably submits to the non-exclusive jurisdiction of such courts in any suit, action or proceeding."

42.      This Court also has personal jurisdiction over the Law Debenture Trust Corporation p.l.c. in its capacity as Security Agent and trustee for the New Preferential Secured Notes because the security at issue is located in this District and Plaintiffs' claims arise, in part, out of The Law Debenture Trust Corporation p.l.c.'s contacts with the forum.

43.      This Court has personal jurisdiction over TopCo because TopCo is availing itself of the United States markets by offering its stock in the 2024 Exchange Offer under the private

placement exemption and targeting, on information and belief, eligible holders within the United States.

44.       This Court also has personal jurisdiction over HoldCo because it pledged stock in assets located in the United States to the Security Agent on behalf of the holders of the New Preferential Secured Notes.

45.       Venue is proper in the district based on Section 14.09 of the 2024 Indenture which provides that "The Issuer and each Guarantor irrevocably waive, to the fullest extent permitted by law, any objection to any suit, action, or proceeding that may be brought in connection with this Indenture, ... in [this Court] whether on the grounds of venue, residence or domicile or on the ground that any such suit action or proceeding has may be brought in an inconvenient forum."

## FACTS AND GENERAL ALLEGATIONS

**A.       The Company and the Notes**

46.       The Intralot Enterprise is an international gaming enterprise in the business of providing integrated gaming systems and services in a number of countries around the world. The Intralot Enterprise designs, develops, operates and supports customized software and hardware for the gaming industry, providing technology and management services to state and state-licensed lottery and gaming organizations worldwide.

47.       The Issuer is a special purpose finance vehicle and issued the 2024 Notes in 2017. The 2024 Notes have an outstanding amount of €500,000,000, pay interest at a rate of 5.250% per annum, payable semi-annually on March 15 and September 15 of each year, and mature in September 15, 2024.

48.      The 2024 Notes are general obligations of the Issuer and guaranteed by the Company and certain "Subsidiary Guarantors," among them Defendants Intralot US and Intralot Global Holdings B.V.

49.      The 2021 Notes were also issued by the Issuer.  The 2021 Notes, prior to the consummation of the Exchange Offers, had an outstanding amount of €250,000,000 and paid interest at a rate of 6.750% per annum, payable semi-annually on March 15 and September 15 of each year, and would have matured on September 15, 2021.

50.      The 2021 Notes and 2024 Notes are essentially identical in material terms, except for their maturity date and interest rate, and they ranked *pari passu* in right of payment with each other and all existing and future debt of the Issuer that is not subordinated in right of payment to the 2024 Notes.  The primary difference between these Notes is that the 2021 Notes would have matured earlier, in September 2021.  Had the Issuer been unable to pay the 2021 Notes in full upon maturity last September, there would have been an Event of Default on the 2021 Notes (as defined therein), and therefore a cross-default under the 2024 Notes.  As a consequence of such default, the 2021 Noteholders and the 2024 Noteholders would have been entitled to receive *pro rata* distributions from the same source of available assets, with the 2024 Noteholders receiving two-thirds of the distribution and the 2021 Noteholders receiving one-third.  This is so because there are €500,000,000 of the 2024 Notes outstanding and, prior to the illicit exchange, €250,000,000 of the 2021 Notes outstanding.

**B.      The Company and the 2021 Noteholders Enter Into a Lock-Up Agreement and Engage in Coercive and Exclusionary Discussions**

51.      During the course of 2020, facing both insolvency and a looming (September 2021) maturity date for the 2021 Notes that it could not meet, the Company began discussions with the

members of an ad hoc group of 2021 Noteholders (the "**2021 Noteholder Group**") regarding the restructuring of the 2021 Notes and 2024 Notes. The Company engaged in discussions exclusively with the 2021 Noteholder Group and excluded Plaintiffs and all other 2024 Noteholders that were not also holders of 2021 Notes from such discussions.

52.     In January 2021, the Company entered into a binding agreement with members of the 2021 Noteholder Group (the "**Lock-Up Agreement**"),[3] which was later extended and updated as discussions continued. This Lock-Up Agreement, which grew to include holders of 90% of the 2021 Notes[4], ensured that any transaction with the Company would provide for preferential treatment of the 2021 Notes over the 2024 Notes, even though there were twice as many 2024 Notes outstanding.

53.     Under the Lock-Up Agreement, the Company set out the terms of a series of transactions to exchange the 2021 Notes for the New Preferential Secured Notes, confirming that all aspects of the Exchange were integrated.

54.     The Lock-Up Agreement also contemplated that the Company would offer the 2024 Noteholders the opportunity to exchange their 2024 Notes for dramatically less valuable consideration—specifically, a minority share of the capital of a new entity that is an indirect parent

---

[3]  *See* Press Release *Intralot enters into a binding lock-up agreement with key noteholders in support of the proposed capital structure optimisation transactions that will address its upcoming maturities and materially deleverage its balance sheet* available at https://www.intralot.com/files/INTRALOT_Announcement_Jan__14_2021_EN.pdf

[4]  *See* July 1, 2021 Press Release *INTRALOT provides an update on the Lock-up agreement and exchange offer process*  ("holders of more than 90% of the 2021 SUNs outstanding as of the date of this press release have agreed to tender their 2021 Notes pursuant to the Lock-up Agreement.") available at https://www.intralot.com/files/PR_INTRALOT_Exchange_Offers_EN_01_07_2021.pdf

of Intralot US—in violation of the 2024 Indenture.  However, as detailed below, to facilitate the

success of the 2021 Exchange Offer, Defendants promised the Cross Holders (who held both 2021

Notes and 2024 Notes) preferential treatment with respect to their 2024 Notes to ensure that they

would vote their 2021 Notes in favor of the 2021 Exchange Offer.

55.     The binding Lock-Up Agreement required holders of more than 90% of the 2021

Notes to tender their 2021 Notes pursuant to the 2021 Exchange Offer.

**C.     The Integrated Scheme to Transfer Assets Available to Satisfy the 2024 Notes for the Benefit of Insider 2021 Noteholders**

56.     Following months of discussion with the 2021 Noteholder Group, on July 1, 2021,

the Issuer announced collusive and preferential concurrent Exchange Offers.[5]  The Exchange

Offers and the transactions resulting therefrom, were consummated on or about August 3, 2021.[6]

57.     As explained below, the Exchange Offers improperly diverted valuable assets to

the 2021 Noteholders at the expense of the Company and its creditors as a whole, to the detriment

of the 2024 Noteholders.

58.     Most fundamentally, the Exchange Offers improperly and illegally diverted

recovery to the 2021 Noteholders by eliminating the *pro rata* distribution that would otherwise

---

[5]  *See* Press Releases summarizing the terms of the Exchange Offers available at
https://www.intralot.com/files/Intralot_-_Press_Release__2021_Exchange_Offer_.pdf and
https://www.intralot.com/files/Intralot-_Press_Release__2024_Exchange_Offer_.pdf.

[6]  *See* Press Release announcing the settlement of the Exchange Offer
https://www.intralot.com/files/Intralot__Press_Release_Successful_Settlement__04_08_21_.pdf(
"This is to announce that the Exchange Offers and the Consent Solicitation settled successfully
on 3 August 2021 and Intralot S.A. designated Intralot US Securities B.V. and its subsidiaries as
'Unrestricted Subsidiaries' under the indenture governing the 2024 Notes on 4 August 2021.")

have followed an event of a default and would have resulted in the 2024 Noteholders receiving two-thirds of the distribution and the 2021 Noteholders receiving one-third. Instead, the Exchange Offers provided a 100% distribution to the 2021 Noteholders.

59.     After the Exchange Offers' consummation, the crown jewel of the enterprise, Intralot US, which represents more than 70% of the enterprise's EBITDA and earnings, was released from the group of entities guaranteeing the 2024 Notes and is now for the exclusive benefit of the 2021 Noteholders. The 2021 Noteholders received the New Preferential Secured Notes, for which Intralot US is the issuer and its subsidiaries the guarantors.

60.     The New Preferential Secured Notes that the 2021 Noteholders received are secured by liens on the assets of Intralot US and its subsidiaries (the "**Intralot US Liens**"), including liens on intercompany indebtedness and bank accounts. Thus, Intralot US—a guarantor of the 2024 Notes immediately before the Exchange Offers—transferred its property, in the form of liens, to the Security Agent, which was the exclusive entity to hold the Intralot US Liens.

61.     Further, HoldCo (Intralot U.S. Holdings B.V.) granted a pledge on the stock of Intralot US (the "**Intralot US Stock Pledge**") to secure the New Preferential Secured Notes. Similar to the granting of the Intralot US Liens, the Intralot US Stock Pledge was granted to the Security Agent.

62.     The 2021 Exchange Offer also provided that all intercompany debt owed to the Company by TopCo, or any of its subsidiaries, including Intralot US, was subordinated to the New Preferential Secured Notes. *See* 2021 Exchange Offer Memorandum at 128-129.

63.     Thus, the Exchange Offers resulted in the Security Agent, for the benefit of members of the 2021 Noteholder Group, receiving: (i) liens on the assets of the most valuable subsidiary (Intralot US); (ii) liens on the intermediate parent's shares in the immediate parent of Intralot US; (iii) nearly complete control over Intralot US and Intralot Tech Single Member S.A. ("**Intralot Tech**") through the Joint Venture mechanism (detailed below); and (iv) intercompany debt owed to the Company by TopCo and its subsidiaries being subordinated to the New Preferential Secured Notes, all to the detriment of the 2024 Noteholders and in clear violation of contractual rights of the 2024 Noteholders.

64.     While the 2021 Noteholders received the strength of the secured credit support of Intralot US, the 2024 Noteholders were stripped of all such value under the Exchange Offers. Intralot US's guarantee of the 2024 Notes has been released, in violation of the 2024 Indenture, and this robust entity purportedly ceased to have any obligation to the 2024 Noteholders or be governed by any of the requirements or restrictive covenants contained in the 2024 Indenture. In other words, following the consummation of the Exchange Offers, if there is an event of default, rather than the 2021 and 2024 Noteholders sharing *pro rata* in distributions from Intralot US, with the 2024 Noteholders distribution being two-thirds based on the relative amounts outstanding, the former 2021 Noteholders who now hold New Preferential Secured Notes will receive all of the value of the crown jewel and its subsidiaries, leaving the 2024 Noteholders with nothing.

65.     The only alternative the 2024 Noteholders were offered was the 2024 Exchange Offer, pursuant to which they had the dubious "opportunity" to exchange some portion of their 2024 Notes for a share of a minority (at most 49%) equity interest in TopCo, an indirect parent of Intralot US.

66.     As equity holders in TopCo, the 2024 Noteholders who accepted the 2024 Exchange Offer (like those who did not) receive no value from Intralot US if there is an event of default under the New Preferential Secured Notes due to the structural seniority of the New Preferential Secured Notes, the liens securing New Preferential Secured Notes, and the subordination of intercompany debt to the New Preferential Secured Notes.

67.     Set forth below is a simplified and summarized corporate and financing structure chart indicating the structure after giving effect to the transactions consummated under the Exchange Offers.



*See* 2024 Exchange Offer Memorandum at 30; 2024 Exchange Information Memorandum at 29.

68.     A key aspect of the transactions was that the current ownership of the Intralot Enterprise retained control, though they ceded certain governance rights to the Cross Holders in order to purchase their cooperation.  Specifically, among other things, Cross Holders were granted authority to appoint new directors (and likely influence direct monetary payouts), in exchange for their agreement to tender their 2024 Notes in the 2024 Exchange Offer.  This authority enables Cross Holders to influence Intralot's dominant revenue generator.

69.     Moreover, the Cross Holders' commitment to tender their 2024 Notes enabled Intralot to receive the minimum number of 2024 Notes that were required to be tendered to satisfy the condition for the 2024 Exchange Offer to be consummated.  This benefitted the Cross Holders' 2021 Notes and the other 2021 Noteholders because, in addition to the 2021 Exchange Offer being conditioned on the consummation of the 2024 Exchange Offer, it assisted Intralot's unlawful scheme to manufacture compliance with the 2024 Indenture by purportedly reducing the value of Intralot's interests in Intralot, Inc. when Intralot sought to designate Intralot, Inc. as an "Unrestricted Subsidiary" under the 2024 Indenture and sever this crown jewel from the companies providing credit support to the 2024 Notes and hand Intralot US to the 2021 Noteholders for their exclusive benefit.  This contrived attempt to avoid the obligations of the 2024 Indenture is impermissible under the 2024 Indenture.  The transactions consummated under the 2021 Exchange Offer and 2024 Exchange Offer, each of which were conditioned on each other, were part of one integrated transaction that both violated the 2024 Indenture and constituted a fraudulent transfer.

70.     Further, pursuant to the transactions under the Exchange Offer, on or around the closing date, IGH, TopCo, and each Participating 2024 Noteholder, including the Cross Holders, were required to enter into the Joint Venture Agreement with respect to TopCo and its subsidiaries, including Intralot US.  *See* 2024 Exchange Offer Memorandum at 28, 102; Exchange Information

Memorandum at 31, 108.  Pursuant to the Joint Venture Agreement, TopCo and its subsidiaries (the "**Group**") are owned, controlled, managed and financed as a joint venture on the terms set out in the Joint Venture Agreement.

71.     Among other things, the Joint Venture Agreement governs the composition of the board of directors of TopCo.  For so long as IGH holds more than 30% of the shares in TopCo, it will be entitled under the terms of the Joint Venture Agreement to exercise control by nominating six directors to the board of TopCo (each, a "**TopCo Director**"), and such greater number as is required for IGH to nominate the majority of the TopCo Directors and facilitate certain requirements as to the location of the management and control of TopCo, to be appointed by the general meeting to the board of TopCo (the "**TopCo Board**").  For so long as the Cross Holders (who are serving as "**Backstop Commitment Parties**"[7]) collectively hold 10% or more of the shares in TopCo, they will each be entitled under the terms of the Joint Venture Agreement to nominate one TopCo Director, to be appointed by the general meeting to the TopCo Board.  For so long as any other shareholder in TopCo holds 10% or more of the shares in TopCo, it will be entitled under the terms of the Joint Venture Agreement to nominate two TopCo Directors, to be appointed by the general meeting to the TopCo Board.  The board of directors of HoldCo is identical to the TopCo Board from time to time.  The board of Intralot US is constituted using the same procedure as set out above for TopCo.  *See* 2024 Exchange Offer Memorandum at 102; 2024 Exchange Information Memorandum at 108.  The board's authority necessarily includes the ability

---

[7]  The exchange offers defines "Backstop Commitment Parties" as "Certain holders of that 2024 Notes that have backstopped the 2024 Notes Exchange Offer by committing that they will tender an aggregate principal amount of €68,176,000 in 2024 Notes in the 2024 Notes Exchange Offer."

to set the strategic direction of Intralot US, including any further restructuring and encumbering of Intralot US.

72.     The Joint Venture Agreement provides that certain matters of the Group require the prior written approval of each shareholder of TopCo holding 10% or more of the Shares and, provided they collectively hold 10% or more of the Shares, the Cross Holders (acting jointly).  The Joint Venture Agreement provides that, subject to certain thresholds, certain Group matters require the prior written approval of applicable shareholders holding a sufficient proportion of the issued and outstanding share capital of TopCo.  Such matters include, indicatively, certain corporate actions (such as fundamental business changes), certain changes to Group's share capital structure, material mergers & acquisitions transactions, and certain related party transactions.  However, and subject to the matters explicitly requiring approval of applicable shareholders, the Participating 2024 Noteholders have no right to manage the affairs of the Group, with TopCo's Board having responsibility for the overall strategic guidance of the Group and for overseeing the Group's internal controls.  *See* 2024 Exchange Offer Memorandum at 102; 2024 Exchange Information Memorandum at 108.

## D.     The Exchange Offers and Issuer's Conduct Violated the 2024 Indenture[8]

73.     The transactions undertaken pursuant to the Exchange Offers breached the 2024 Indenture, including by depriving the 2024 Noteholders of the value of significant guarantees, granting impermissible liens to secure the New Preferential Secured Notes, improperly attempting to designate certain guarantors under the 2024 Indenture as Unrestricted Subsidiaries, and further

---

[8]  As mentioned in fn. 2, Plaintiffs anticipate that the newly appointed trustee for the 2024 Notes will seek to intervene to assert indenture based claims on behalf of the 2024 Noteholders.

depriving the 2024 Noteholders of value by causing guarantors of the 2024 Notes to enter into a subordination agreement.

**1.    Designation of Intralot US and Its Subsidiaries as Unrestricted Subsidiaries is Impermissible**

74.    A key aspect of the 2021 Exchange Offer involved changing the status of Intralot US and other subsidiaries under the 2024 Indenture from "Restricted" to "Unrestricted," in order to avoid various restrictions under the covenants contained in the 2024 Indenture and to allow Defendants to saddle those entities with liens and release them from their obligations to the 2024 Noteholders.

75.    Section 4.17 of the 2024 Indenture entitled "Designation of Restricted and Unrestricted Subsidiary" permits the Company (Intralot S.A.) to designate a Restricted Subsidiary as an Unrestricted Subsidiary only if certain qualifications are met.

76.    Specifically, Section 4.17 of the Indenture provides:

> The Board of Directors of the Company may designate any Restricted Subsidiary (other than the Issuer) to be an Unrestricted Subsidiary (a "Designation") if that Designation would not cause a Default.  If a Restricted Subsidiary is designated as an Unrestricted Subsidiary, the Fair Market Value of the Company's interest in the Subsidiary so designated shall be deemed to be an Investment made as of the time of the Designation and shall reduce **either** (i) the amount available for Restricted Payments under Section 4.07 of this Indenture **or** (ii) the amount available for Permitted Investments, as determined by the Company.  That Designation shall only be permitted if the Investment would be permitted at that time and if the Restricted Subsidiary otherwise meets the definition of an Unrestricted Subsidiary.

> (emphasis added.)

77.    Based on the implied equity value of the Exchange Offers, the value of Intralot US at the time of the Exchange Offer was €345,000,000, which, on information and belief, resulted in

a transfer that far exceeded not only the availability under either the Restricted Payments basket or the Permitted Investments basket, but also the combined Restricted Payments and Permitted Investments basket, if such a combination were permissible under the 2024 Indenture, which it is not.

78.     The 2024 Indenture Section 1.01 defines "Fair Market Value" to mean:

> with respect to any asset or property, the sale value that would be obtained in an arm's length free-market transaction between an informed and willing seller under no compulsion to sell and an informed and willing buyer under no compulsion to buy, as determined in good faith by the Board of Directors, chief executive officer, chief financial officer or responsible accounting or financial officer of the Company (it being understood that the discounted value of any Securitization Assets (or related assets) sold, conveyed or transferred in connection with any Qualified Securitization Financing may constitute "Fair Market Value" if such discount is on customary terms for comparable financings as determined in good faith by Board of Directors, chief executive officer, chief financial officer or responsible accounting or financial officer of the Company), unless otherwise indicated.

79.     The definition of Fair Market Value includes the requirement of an arm's-length free-market transaction.  Therefore, manufactured factors that artificially depress the value of Intralot US *pro forma* as a result of the transactions consummated under the Exchange Offers—such as Intralot US going from being a 100% owned, to 65% owned, with the other 35% being transferred to the Cross Holders under the Exchange Offers, and then a moment later being designated an Unrestricted Subsidiary, with 100% of Intralot US's value transferred away from the 2024 Noteholders—are not permissible when determining whether Intralot US's Fair Market Value was low enough to fit within any of the baskets to designate it as an Unrestricted Subsidiary. Nor is the discount rate at which the 2024 Notes and the 2021 Notes were offered to be exchanged in the Exchange Offers, which is an artificial number negotiated between Intralot and the Cross Holders in their illicit scheme to shift the value of Intralot US solely for the benefit of the 2021 Noteholders, a valid basis to apply a similar discount to the value of Intralot US.

80.     Prior to the Exchange Offers, which were one integrated transaction conceived of and consummated concurrently, Intralot US was a 100% Restricted Subsidiary providing full credit support to the 2024 Notes.  After the impermissible designation of Intralot US as an Unrestricted Subsidiary, 100% of that value was transferred away from the 2024 Noteholders.  Therefore, 100% of Intralot US's Fair Market Value in an arm's-length free-market transaction was required to be calculated when it was determined whether Intralot US could be designated as an Unrestricted Value, not its value after part of the transactions under the Exchange Offers were consummated, nor its value based on the artificial factors included as part of the Exchange Offers.

81.     Moreover, additional value was transferred away from 2024 Noteholders as a result of Intralot US, TopCo, and its other restricted subsidiaries being required to enter into a subordination agreement, which caused intercompany payables owed by any of these companies to the Issuer, Intralot S.A., TopCo, HoldCo, Intralot Tech, or IGH to be subordinated to the New Preferential Secured Notes.  *See* 2021 Exchange Offer Information Memorandum at 128-129.

82.     Intralot US and the other specified entities do not meet the qualifications set forth in the 2024 Indenture to be designated Unrestricted Subsidiaries.

### 2.     No Lien Can Be Granted Without Granting an Equal and Ratable Lien to 2024 Notes

83.     Section 4.10 of the 2024 Indenture governs "Limitation on Liens" and prohibits the Company and any "Restricted Subsidiary" from incurring liens, except for Permitted Liens, unless the 2024 Notes are granted an equal and ratable lien.  Entities that qualify as Unrestricted Subsidiaries are not barred from incurring liens.

84.     The definition of Permitted Liens in the 2024 Indenture[9] includes, among other things:

> (j) Liens securing Permitted Refinancing Debt of secured Debt incurred by the Company or a Restricted Subsidiary, provided that any such Lien is limited to all or part of the same property or asset (plus improvements, accessions, proceeds of dividends or distributions in respect thereof) that secured the Debt being refinanced;

> (r) Liens (including put and call arrangements) on Capital Stock, warrants or other securities of any Unrestricted Subsidiary that secure Debt of such Unrestricted Subsidiary;

> (ee) Liens created on any asset of the Company or any Restricted Subsidiary to secure (a) Debt of the Company or any Restricted Subsidiary incurred pursuant to Section 4.06(a) of this Indenture, (b) Debt of the Company or any Restricted Subsidiary incurred pursuant to Section 4.06(b)(i) or Section 4.06(b)(xvi) of this Indenture or (c) any Permitted Refinancing Debt in respect of Debt incurred pursuant to the foregoing clause (a) or this clause (c), provided that such Debt incurred pursuant to the foregoing clauses (a) through (c) do not exceed in the aggregate a principal amount (or accreted value, as applicable) equal to the greater of €100.0 million and 10.0% of Total Assets less the aggregate principal amount (or accreted value, as applicable) of Non-Guarantor Debt at any time outstanding (except, for the avoidance of doubt and to avoid duplication, to the extent such Non-Guarantor Debt is secured by a Lien incurred pursuant to this clause (ee));

> (hh) any extension, renewal, refinancing or replacement, in whole or in part, of any Lien described in the foregoing clauses (a) through (gg); provided that any such Lien is limited to all or part of the same property or assets (plus improvements, accessions, proceeds or dividends or distributions in respect thereof) that secured (or, under the written arrangements under which the original Lien arose, could secure) the Debt being refinanced.

85.     The definition in paragraph (ee) of Permitted Liens permits liens securing debt that "do[es] not exceed in the aggregate a principal amount (or accreted value, as applicable) equal to the greater of €100.0 million and 10.0% of Total Assets." Thus, any lien incurred must fall within this threshold.

---

[9]  *See* 2024 Indenture (Exhibit A hereto).  The definition of "Permitted Liens" begins on page 19.

86.     According to the Company's balance sheet dated as of June 30, 2021, its Total Assets were €574.7 million.[10]  Thus, the secured debt of €205 million issued to holders of 2021 Notes pursuant to the 2021 Exchange Offer far exceeded the permissible 10% threshold under this section.  Nor does the 2021 Exchange Offer fall within any of the other paragraphs defining Permitted Liens.

### 3.     Change of Control

87.     The term "Change of Control" is defined in Section 1.01 of the 2024 Indenture to mean "the direct or indirect sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one or a series of related transactions, of all or substantially all of the properties or assets of the Company and its Subsidiaries taken as a whole to any Person. . . ." (emphasis added).  Thus, a disposition of "all or substantially all" of the assets of the Company, including the granting of liens on the assets and stock of Intralot US, which represents more than 70% of the Company's EBITDA and 70% of its earnings, constitutes a "Change of Control."  In addition, Intralot US and its subsidiaries will be further severed from the Issuer and the Company as a result of the contemplated release of their guarantees of the 2024 Notes and the subordination of their intercompany indebtedness owed to the Issuer and the Company to the New Preferential Secured Notes.

88.     Section 4.15(a) provides: "If a Change of Control occurs, each Holder of Notes shall have the right to require the Issuer (or the Company, if the Company makes the purchase offer referred to below) to repurchase all or any part (equal to €100,000 or any integral multiple of

---

[10]   https://www.intralot.com/files/PR_2Q21__EN__Final.pdf

€1,000 in excess thereof) of that Holder's Notes pursuant to an offer (a 'Change of Control Offer')
on the terms set forth in this Indenture."

89.     In addition, Section 5.01 of the 2024 Indenture governs "Merger, Consolidation or
Sale of Assets."   This section provides that the Company may not directly or indirectly "sell,
assign, transfer, convey or otherwise dispose of all or substantially all of the properties or assets
of the Company and its Restricted Subsidiaries . . . . in one or more related transactions" unless
the acquiring entity "assumes all the obligations of the Company under the Company Guarantee
and this Indenture pursuant to agreements reasonably satisfactory to the Trustee."

90.     Thus, under Section 5.01 of the 2024 Indenture, transferees (including participants
in the 2021 Exchange Offer) are required to assume all of the Company's obligations under the
2024 Indenture, but no provision was made for them to do so.

91.     On July 28, 2021, certain of the Plaintiffs commenced this Action by filing a
complaint, seeking declarations that the Defendants (other than the Security Agent) would breach
the 2024 Indenture by consummating the transactions contemplated by the Exchange Offers and
that transfers contemplated by the transactions would be avoidable under New York's version of
the Uniform Voidable Transactions Act, N.Y. Debt. & Cred. Law §§ 270-281. Such Plaintiffs also
sought injunctive relief.  Dkt. No. 1.

92.     Though this Court denied such Plaintiffs' request for a temporary restraining order,
the Court stated that claims arising under the NYUVTA had a reasonable likelihood of success
and granted leave to amend.  Dkt. 34, at 9-10.  The Defendants nonetheless proceeded with the

consummation of the transactions contemplated by the Exchange Offers[11] including Intralot US transferring the Intralot US Liens and Intralot U.S. Holdings B.V. transferring the Intralot US Stock Pledge to the Security Agent.

93.     The Exchange Offers were not made in good faith.

94.     Intralot US, along with the Intralot Enterprise, was insolvent or was rendered insolvent by the Exchange Offers.  According to Intralot's pre-transaction financials as of June 30, 2021, its assets were €574.4 million and its debts were €729.3 million.

95.     The Exchange Offers resulted in the 2021 Noteholders receiving both the current and prospective value of Intralot US, without transferring to Intralot US reasonably equivalent value in exchange for the transfer or obligation.

96.     Under NYUVTA § 274(b) and GAUVTA§ 18-2-75 (b), the Intralot US Liens were transferred by Intralot US to the Security Agent, for the benefit of the 2021 Noteholders, as part of an integrated transaction to repay the 2021 Notes, which was antecedent debt of Intralot US.

97.     Intralot US and each Intralot Enterprise Defendant engaged in a business or transaction for which its remaining property was an unreasonably small capital and each of the Transfers made and Obligations incurred resulting from the Exchange Offers would be voidable as fraudulent as to the Debtors' creditors.

---

[11]   See Press Release announcing the settlement of the Exchange Offer https://www.intralot.com/files/Intralot__Press_Release_Successful_Settlement__04_08_21_.pdf ("This is to announce that the Exchange Offers and the Consent Solicitation settled successfully on 3 August 2021 and Intralot S.A. designated Intralot US Securities B.V. and its subsidiaries as "Unrestricted Subsidiaries" under the indenture governing the 2024 Notes on 4 August 2021.")

## FIRST CLAIM FOR RELIEF
(Insider Preference under NYUVTA and GAUVTA)

98.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 97 herein.

99.     Under NYUVTA and GAUVTA, a transfer made by a debtor is voidable as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

100.     At all relevant times Plaintiffs were creditors of each Intralot Enterprise Defendant, including Intralot US and IGH , prior to any of the Transfers.

101.     Under NYUVTA § 274(b) and GAUVTA § 18-2-75(b)**,** the Intralot US Liens were transferred by Intralot US to the Security Agent, for the benefit of the 2021 Noteholders, as part of an integrated transaction to repay the 2021 Notes, which was antecedent debt of Intralot US.

102.     Under NYUVTA § 274(b) and GAUVTA § 18-2-75(b), the Intralot Stock Pledge was transferred by Intralot US Holdings B.V. Intralot, Inc. to the Security Agent, for the benefit of the 2021 Noteholders, as part of an integrated transaction to repay the 2021 Notes, which was antecedent debt of Intralot US.

103.     The 2021 Noteholder Group meets the definition of "insider" under the NYUVTA and GAUVTA because the 2021 Noteholder Group utilized its leverage to control the Company, including Intralot US, and directed the Security Agent to receive the Transfers, which resulted in a transaction that violates the Company's other obligations and its duties to its creditors under applicable law, and that puts the Company on the path to being unable to pay its other debts in full.

104.      In addition, the 2021 Noteholder Group also meets the definition of "insider" as its parties used their relationships to the Company to negotiate and consummate the Exchange Offers on a non-arm's length basis.

105.      The 2021 Noteholder Group is an insider by virtue of exercising control over the Company and in collusion with Company management.

106.      Intralot US was insolvent at the time of the Transfers, based on publicly available information, and the 2021 Noteholder Group (which had unfettered access to the Company's financials) knew of and took advantage of Intralot US's insolvency.

107.      Intralot US Securities B.V., which pledged the stock in Intralot US's direct holding company, Intralot US Holdings B.V., knew of and took advantage of Intralot US's insolvency.

108.      As a direct and proximate result of the foregoing, all Transfers resulting from the Exchange Offers' consummation are voidable as fraudulent transfers and insider preferences if consummated.

109.      Plaintiffs are entitled to avoidance of each Transfer to the extent necessary to satisfy the Plaintiffs' claims.

## SECOND CLAIM FOR RELIEF
(Actual Fraudulent Transfer under NYUVTA § 273(a) and GAUVTA § 18-2-74(a))

110.      Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 109 herein.

111.      Under New York law, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . . if the debtor made the transfer or incurred the obligation . . . . with

actual intent to hinder, delay or defraud any creditor of the debtor." N.Y. Debt. & Cred. Law § 273.

112.      Under Georgia law, (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, . . . . if the debtor made the transfer or incurred the obligation: . . . (1) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." GAUTVA § 18-2-74

113.      The Exchange Offers demonstrate the intent to, and effectively did, hinder, delay, or defraud the 2024 Noteholders. Among the badges of fraud identified by the NYUVTA and GAUTVA, the following apply here, among others:

(a)      The Exchange Offers resulted in the transfer of liens, stock and control to the 2021 Noteholders and the 2021 Noteholder Group, which are insiders as defined by NYUVTA § 270(h)(2)(iii) and GAUTVA § 18-2-71 (8) and relevant case law;

(b)      The Intralot Enterprise Defendants has been sued and threatened with suit by the 2024 Noteholders;

(c)      The transactions contemplated by the Exchange Offers transferred the Company's crown jewels (Intralot US and Intralot Tech), with Intralot US representing more than 70% of its EBITDA and earnings, and Intralot Tech representing a significant but undetermined value. Through the Exchange Offers, Intralot US granted a lien on the Intralot US assets, and also transferred to the 2021 Noteholder Group and the Cross Holders significant potential upside equity value in Intralot US in a future public offering or liquidity event;

(d)      The value transferred to the 2021 Noteholder Group, the 2021 Noteholders and the Cross Holders under the Exchange Offers through liens, stock, and control is not reasonably equivalent to the value received by the Company in exchange;

(e)      Each Intralot Enterprise Defendant is demonstrably insolvent or was rendered insolvent shortly after the consummation of the Exchange Offers;

(f)      The Exchange Offers caused the imposition of additional substantial debt; and

(g)      The Exchange Offers had the effect of transferring the essential assets of the Company to the 2021 Noteholders and the Cross Holders through the proposed

liens and pledges.  The 2021 Noteholders are themselves insiders via actual control or otherwise, including as a result of the Exchange Offers.

N.Y. Debt. & Cred. Law § 273; Georgia § 18-2-74.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

**A.**     On the First Claim for Relief, avoidance of the Transfers as insider preferences under NYUVTA and GAUVTA to the extent necessary to satisfy the Plaintiffs' claims and for other relief permitted under the NYUVTA and GAUVTA.

**B.**     On the Second Claim for Relief, avoidance of the Transfers as actual fraudulent transfers under NYUVTA and GAUVTA to the extent necessary to satisfy the Plaintiffs' claims and for other relief permitted under the NYUVTA and GAUVTA.

**C.**     Such other and further relief as the Court deems appropriate.

Respectfully submitted this 31st day of January 2022.

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: _____
Dennis Hranitzky

2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, Utah 84121
Telephone: 801-515-7300
Facsimile: 801-515-7400

Kevin Reed
Debra O'Gorman
Laura Santos-Bishop
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Facsimile: 212-849-7100

Eric Winston (*pro hac vice to be filed*)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: 213-443-3000
Fascimile: 213-443-3100

Emails:  dennishranitzky@quinnemanuel.com
          ericwinston@quinnemanuel.com
          kevinreed@quinnemanuel.com
          debraogorman@quinnemanuel.com
          laurasantos@quinnemanuel.com

*Attorneys for Plaintiffs*

34